## THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. GEORGE WALZ.

1. DENIAL, *Failure to Verify.* An allegation in a pleading of the non-existence of authority is not to be taken as true because the denial of the same is not verified.

2. RAILROAD COMPANY — *Failure to Sound Whistle — Accident at Crossing.* The failure to sound the whistle of a locomotive approaching a crossing, as the statute requires, is not ordinarily negligence to a traveler who sees the train 80 rods away, and knows that it is approaching; and an instruction by the court as to the statutory duty of the railroad company in respect to sounding the whistle of a loco-

28 — 40 KAS.

motive before crossing a highway, in a case where the plaintiff has sufficient notice of an approaching train, is not material error where the court distinctly charges that the failure to give the signal will not create a liability against the company unless the injury was the result of such failure.

3. NEGLIGENCE — *Evidence Supports Finding.* The facts of the case examined, and *held* to be sufficient to support a finding that a collision and injury occurring at a railroad crossing was the result of negligence on the part of the railroad company.

### Error from Atchison District Court.

GEORGE WALZ brought this action against *The Atchison, Topeka & Santa Fé Railroad Company,* and stated in his petition that on August 2, 1886, he was passing along a highway near the city of Atchison with a threshing outfit, composed of a traction engine, tank, separator, and stacker, all attached together, and that he approached a crossing of the defendant's road, when he stopped to ascertain whether he could safely cross the railroad, and that he was then signaled to cross by a flagman employed by the defendant and another railroad company to warn persons crossing of the approach of trains; that when he attempted to cross in obedience to the signal of the flagman, he was run into by an engine and train of the defendant company, which demolished the separator and injured the stacker, so that he was damaged to the extent of $375. He alleged that the damage was occasioned by the negligence and carelessness of the defendant, its servants and employés, and without any fault on the plaintiff's part.

The railroad company filed a verified answer, denying negligence upon its part, and also that the flagman was employed by the company or had any authority to act for it in any way; and it also alleged that the injuries complained of were the result of the plaintiff's own negligence.

At the trial, which was had on March 18, 1887, a series of particular questions of fact was submitted to the jury for answer; and these, with the answers appended, are as follows:

"1. Was the plaintiff, George Walz, the owner of a steam engine, tank-wagon, separator, and stacker on the 2d day of August, 1886? *Ans.:* Yes.

" 2. Were the different parts of said threshing outfit attached together, and were they going southwest from the city of Atchison on said day in charge of the plaintiff and his employés? A. Yes.

" 3. Were there four separate parts of said threshing outfit attached together, consisting of a steam engine, a tank-wagon, a separator, and a straw stacker? A. Yes.

" 4. Was said threshing outfit propelled over the public road partly or wholly by the steam engine attached thereto, and was said steam engine in use for such purpose at the time and place above mentioned? A. Yes.

" 5. Was said outfit passing along the public highway, attached together, being moved by said engine in the care of the plaintiff and his employés on the 2d day of August, 1886, and did it approach the tracks of the Missouri Pacific railway, the Central Branch railroad, and the defendants, in the order in which they are here named, at a point where all of said tracks are laid near each other crossing said public highway, about a mile from the city of Atchison? A. Yes.

" 6. Was the track of said defendant the farthest one from said threshing machine before the attempt was made to cross the tracks? A. Yes.

" 7. Was the flagman at said crossing employed by the defendant? A. No.

" 8. Did said flagman have any authority to act for or represent the Atchison, Topeka & Santa Fé Railroad Company? A. No evidence that he was.

" 9. Did he have any duties to perform for the defendant? A. No evidence that he had.

" 10. If your answer to either or both of these last two questions is yes, state in what way he represented the defendant, and what duties he had to perform for the defendant? A. ———.

" 11. Was said flagman paid by the Missouri Pacific Railway Co., and was he entirely under the control of that company? A. No evidence to the contrary.

" 12. Did the person having charge of said threshing machinery attempt to cross said tracks with it, going southwest, about 6 o'clock P.M. of said day? A. Yes.

" 13. How many men had control of and were engaged in running said machinery? A. Four.

" 14. Did they stop on the north side just before reaching said tracks? A. Yes.

"15. Did any of them go ahead and look up and down the tracks to see if a train was approaching? A. No.

"16. Was the machinery they were moving cumbersome and necessarily slow in moving over such a place as said tracks? A. Yes.

"17. Would it have been exercising more than ordinary prudence and care for some one having charge of said machinery to have gone ahead and looked to see if said tracks were clear? A. It would have been more than ordinary care.

"18. If some one had taken a position on defendant's track and watched and given warning, could said accident have been avoided? A. No.

"19. How far could defendant's train be seen approaching from the west from said crossing? A. Seven hundred or eight hundred yards.

"20. Was the threshing machinery in four different pieces or sections coupled together — the engine first, the tank-wagon next, the separator next, and the straw-stacker last? A. It was.

"21. While crossing the defendant's tracks, did the persons having control of said threshing machinery first discover the defendant's passenger train approaching? A. No; but while on the C. B. track.

"22. Did the person having control of said threshing-machine engine apply all the steam he could to get said machinery over the track in time, and did that cause a sudden jerk, breaking the coupling between the tank-wagon and the separator, leaving the separator on the defendant's track, and did the engine and tank-wagon move off to the south? A. The person controlling said machine engine did put on all steam he could to get over in time. The sudden jerk did not cause the coupling to break. As the separator was moving from the M. P. track to and half-way across the defendant's tracks, the engine and tank moved south.

"23. How far did the engine and tank-wagon get from the track before the collision? A. About twenty feet.

"24. How far was the passenger train away at the time said coupling broke? A. About two hundred yards.

"25. At what rate of speed was said train going at the time the coupling broke? A. About twenty miles per hour.

"26. If said coupling had not broken, would said threshing machine have passed over the tracks safely? A. It probably would.

"27. Was the railroad engineer looking ahead, watching the

threshing outfit cross the tracks, before the coupling broke?
A. He was.

"28. How far from the crossing was the train when the
railroad engineer first discovered that the couplings had broken,
leaving the threshing machine on the track? A. About two
hundred yards.

"29. Did the railroad engineer apply the brakes and re-
verse his engine at once, to control the train? A. Yes, but
too late.

"30. What else could he have done to prevent the injury?
A. He could do nothing else at that time.

"31. What act or acts of negligence on the part of the de-
fendant or its employés, caused the injury? A. In not keep-
ing his engine under control when he had it so, by raising his
air-brake before the separator was fully over the track.

"32. Did the railroad engineer sound the whistle three
times, at least eighty rods from said crossing? A. By pre-
ponderance of evidence he did not.

"33. Did said railroad train come to a full stop just after
passing said crossing? A. Yes.

"34. Was it stopped as soon as the engineer could stop it
with the means at hand? A. Yes.

"35. Was said engineer a competent and skillful engineer?
A. He is.

"36. Was George Walz, the plaintiff, operating said thresh-
ing machine engine? A. He was.

"37. When he reached the Missouri Pacific track, was there
anything to obstruct his vision to the west, the direction the
defendant's train was coming from? A. There was.

"38. Did he look to the west from that point? A. Yes.

"39. Was the defendant's train in sight at that time? A.
Was not.

"40. Did he then move his threshing machine, engine and
outfit along across the Missouri Pacific track, on the Central
Branch track, so the heads of his horses were near the defend-
ant's track before he looked again to see whether a train was
coming? A. He did.

"41. Were there three different passenger trains due to pass
that point between five and six o'clock, and did the plaintiff
know it? A. Yes.

"42. If the plaintiff had looked carefully to the west could
he have seen said train before he did? A. He might.

"43. Could said train be seen from said Missouri Pacific

track for about one-fourth of a mile? A. He could, if no obstruction.

"44. How far was it away when George Walz first saw it? A. About seven hundred yards.

"45. At what rate of speed was it going? A. About 35 miles per hour.

"46. At what rate of speed was said threshing machine going? A. About 4 miles per hour.

"47. How far from defendant's track did the tank-wagon get at the time the railroad engine struck the separator? A. About 20 feet.

"48. Did the threshing-machine engine stop after crossing the defendant's track, before the engine struck the separator? A. No evidence to that effect.

"49. What is the distance from the Missouri Pacific track to the Central Branch track? A. About 12 feet.

"50. What is the distance from the Central Branch track to the defendant's track? A. 10 feet.

"51. What is the distance from the outside rail of the Missouri Pacific track to the outside rail of the defendant's track? A. About 37 feet.

"52. Had the plaintiff been acquainted with the tracks and crossings for years? A. Yes.

"53. Had he been operating said threshing-machine outfit during the season before, and did he understand how to move it? A. Yes.

"54. What was the length of said threshing-machine outfit when it was all coupled together? A. About 58 feet.

"55. Could the different parts or sections be moved separately over hilly or dangerous places? A. Yes.

"56. Did said George Walz try to stop said threshing outfit when he saw said railroad train? A. He did not.

"57. Did said railroad engineer use his best judgment and do what he could to avoid said accident? A. He used good judgment with the exception of not keeping his train under control when he had it.

"58. If said George Walz had stopped his engine when he first saw defendant's train approaching, and turned his horses as much as he could, would his property have been injured? A. He could not have turned his horses' heads so as to prevent injury."

The general verdict was in favor of the plaintiff, assessing the amount of his recovery at the sum of $210. The railroad

company moved to set aside the verdict and grant a new trial, which motion was overruled, and judgment was entered in favor of the plaintiff for $210. A reversal of this judgment is sought by the company.

*Geo. R. Peck, A. A. Hurd,* and *J. G. Egan,* for plaintiff in error.

*Smith & Solomon,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The collision between the threshing machine and the railroad train occurred at a point in Atchison county where a public and much-used highway crosses the tracks of the Atchison, Topeka & Santa Fé Railroad, the Central Branch Union Pacific Railroad, and the Missouri Pacific Railway. At that place the tracks extend in the same direction, and are only a few feet apart. It was averred and claimed by Walz that the defendant, in connection with another railroad company, employed a flagman at the crossing to warn persons of the approach of trains, and to signal them when they could cross in safety, and that the flagman so authorized signaled Walz to cross on the occasion of the injury.

The railroad company, by an answer duly verified, alleged that it did not keep or employ a flagman at the crossing, and if there was one there he was employed by some other party, and had no authority to act for it. The court admitted testimony showing that a flagman had been stationed at this crossing for years, who had signaled parties approaching the railroad tracks, and also submitted to the jury the questions as to whether the flagman was the servant of the company, and whether the collision resulted from his negligence. It is urged that the verified allegation of want of authority in the flagman should have been taken as true in the absence of a verified reply under §108 of the code, and that the court erred in allowing such testimony, and by instructing the jury as it did. The allegation in the answer was a negative one, and did not state the existence of any appointment or author-

1. Denial, fail-<br>
ure to verify. ity.   There was no occasion to deny a denial. Authority was alleged by the plaintiff and denied by the railroad company, and this closed the issue and rendered any further averment or denial by the plaintiff unnecessary and improper.   The issue thus formed warranted the introduction of testimony, and an instruction of the court upon the same.   Besides, testimony showing that a flagman had been stationed there for years, and who had warned all persons approaching when they could cross in safety, and that he had signaled the plaintiff to cross, was admissible to refute the charge of negligence on the part of the plaintiff.   The jury were charged that, if the flagman was neither an employé nor servant of the company, it would not be liable on account of any negligence of his; and there is a finding by the jury that the flagman was not employed by the defendant, and had no authority to act for it; so that, in any view of the case, the railroad company has no cause for complaint.

Another objection is, that the court instructed the jury with reference to the duty of the railroad company in sounding the whistle at least eighty rods from a public crossing.   The crossing was outside of any city or village, and there was testimony that the whistle was not sounded as it should have been, and it was therefore one of the questions in the case.   The objection is based on the ground that the plaintiff was aware of the approach of the train when it was about 700 yards away, and therefore a failure to give the signal was not negligence as to him.   Of course, if the plaintiff knew that the train was coming, he needed no warning of such fact, and the omission

2. Railroad com-<br>
pany—failure<br>
to sound<br>
whistle—ac-<br>
cident at<br>
crossing. to sound the whistle will not create a liability when such omission or neglect of duty did not in any way contribute to the injury. (*A. T. & S. F. Rld. Co. v. Morgan,* 31 Kas. 77.)   It might be that a signal would be advantageous to a traveler approaching a railroad track, although he might see the train in the distance.   If he saw the train, but was unable to determine from his point of observation whether it was far away or near at hand, or whether it was advancing or standing still, would

not the signal be beneficial to him, and serve one of the purposes for which it was intended ? In the present case, however, no prejudice could have resulted to the company from the instruction as to the duty of the company in giving signals. Connected with the statement as to this duty of the company, and as a part of the same instruction, the jury were distinctly charged that even if there was a failure to give the signal and an injury followed, the railroad company would not be liable, unless the injury was the result of such failure.

It is claimed that no negligence can be imputed to the railroad company, and that the injury was unavoidable. The jury have found that there was negligence on the part of the engineer in failing to bring and keep his engine under control after seeing the threshing train coming upon the track. No want of care can be charged to Walz. When he approached the track he looked in the direction from which the train was coming, but it was not in sight. He waited there until he was signaled to cross, and then he started his train, and was upon the track when he discovered the coming train. He had then advanced too far to turn about, and the only chance of escape was to hasten forward. This train consisted of a team of horses, a traction engine, a tank, a separator, and a stacker. They were all attached together, making quite a long train, which was difficult to handle, but which could be easily seen by the engineer. They were seen by him when he was more than 700 yards away, and his train was then moving forward at a speed of 35 miles an hour. He reduced the speed to 20 miles an hour, and brought his engine under control, and could then have stopped the train before reaching the crossing. He ran on, however, within about 200 yards, or as he stated, within six or seven car-lengths from the crossing, and the horses, engine and tank had then crossed the track, and the separator was upon the track. He states that he thought there was then sufficient time for the remainder of the threshing train to cross over, and he released the air-brake and increased the speed. Just at that time the coupling between the separator and the tank-wagon parted, and the engi-

neer again applied the air and reversed the engine, but he was then too close to the crossing to avoid a collision. The threshing train was about 58 feet long, and was an unusual and cumbrous outfit to be found passing over the track. It was seen and its character known by the engineer. He could not count upon the track being cleared of such an obstruction with the same certainty as he could if it had been a single team and vehicle. In view of the nature of the obstruction and the action of the engineer in running so close to the crossing while the separator was yet on the track, his release of the air-brakes, by which he lost control of the engine at that time, and the fact that the tank-wagon was only 20 feet from the track when the collision occurred, we think it was fairly a question for the jury whether the engineer exercised reasonable judgment and due care in his attempt to avoid the collision. The jury have found that the accident might have been avoided by the exercise of reasonable care on his part; and after reading all the testimony we are unable to say that the finding and verdict should be set aside.

3. Negligence—evidence supports finding.

The other matters referred to in the argument are not such as require attention; and as no material error is found, the judgment of the district court will be affirmed.

All the Justices concurring.