ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. NANCY J. JUDAH.

No. 12,670.    (70 Pac. 346.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury at Crossing.* A traveler on the highway who is about to cross a railroad-track, and who is already warned of the approach of a train in time to escape injury, cannot complain of the negligence of the railway company for its failure to give signals of danger.

2. ——— *Speed of Trains.* In an open country, where the view of a traveler on the highway is unobstructed, a railway company is not chargeable with negligence in running its passenger-trains over a road-crossing at a speed of forty to fifty miles per hour.

3. ——— *Immaterial Question of Negligence.* Whether the carelessness of the driver of a wagon can be imputed to another riding with him, who is injured at a road-crossing in a collision between the vehicle and a railway-train, becomes immaterial when it is found that the railway company was guilty of no acts of negligence toward the occupants of the wagon.

Error from Atchison district court; W. T. BLAND, judge. Opinion filed October 11, 1902. Reversed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.
*C. D. Walker,* and *J. L. Berry,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This was an action by Nancy J. Judah, as mother and next of kin of Fannie Judah, to recover damages for her death.    She had judgment in the district court.

Jennings D. Judah, the husband of the plaintiff below, and his two daughters, Fannie and another, were killed in a collision between a spring wagon in which they were riding and an engine pulling a passenger-train of plaintiff in error.    The accident happened in January, 1898, about six o'clock P. M., at a crossing a short distance west of the city of Atchison, where what is known as the Monrovia road passes over the tracks of the Missouri Pacific Railway Company, the Central Branch Union Pacific Railway Company, and the Atchison, Topeka & Santa Fe Railway Company, in the order named, beginning from the north. The wagon road runs from the north in a southwesterly direction across the tracks.

Jennings D. Judah, accompanied by his two daughters, started from Atchison toward their home in the country.    He was driving the team.    When they reached a point several feet north of the Missouri Pacific track, which is about fifty feet north of the track of plaintiff in error, a switchman whose watch house, or "shanty," was about 140 feet north from the center of the Santa Fe track, south of the wagon road, and eight or nine feet north of the Missouri Pacific railway track, heard the voices of persons approaching.    About this time he saw the headlight of an engine coming from the west.    A few seconds later he heard the whistle sounded eighty rods distant.    Immediately he heard one of the women in the wagon exclaim, "Stop; there comes a train!"

He then took his lantern, went out, and saw a team of horses and a spring wagon approaching from the northeast. The team was then sixty-five feet distant from the Santa Fe track. He shouted, as the jury found, in more than a moderate tone of voice, "Hold on; you can't make the crossing!" The team was going at a brisk trot and continued at the same speed until the collision with the locomotive. Eighty rods from the crossing the engineer sounded four blasts of the whistle. The jury found that the bell was not rung. They also found that, as soon as the engineer learned that there was a team going toward the crossing, he applied the air-brakes with full force. The negligence of plaintiff in error was found by the jury, in answer to a particular question, as follows:

"Ques. If you find that deceased came to her death by or through the fault or negligence of the defendant, then state fully all the facts and things which you find from the evidence constituted the said fault or negligence of the defendant. Ans. Excessive rate of speed over a crossing which had an unusual amount of travel over same, and failing to provide proper and reasonable precautions."

The testimony introduced by plaintiff below tended to show that the train was running at a speed of forty to fifty miles per hour. It is an established fact that the occupants of the wagon had due warning of the approach of the train when they were at least sixty-five feet from the track of the plaintiff in error. The first alarm came from one of the women, who said, "Stop; there comes a train!" and the second from the switchman who was watching the crossing. Having ample knowledge of the proximity of the train, a failure to ring the bell cannot be charged against the railway company as an act of negligence. A signal by whistle or bell in such cases is to give warning of

an approaching train.  When a traveler, about to cross a railroad-track, has notice of that which a whistle or bell signifies, the giving of such warnings is a work of supererogation as to him.  A failure to give notice to one already informed of a fact cannot be called negligence.  (*C. R. I. & P. R. R. Co. v. Bell, Adm'r*, 70 Ill. 102; *Pakalinsky v. N. Y. Cent. & Hud. R. R. R. Co.*, 82 N. Y. 424; *A. T. & S. F. Rld. Co. v. Walz*, 40 Kan. 433, 19 Pac. 787.)

There remains, therefore, in the case but one question, which is whether the railway company was chargeable with negligence in running its train at a speed of forty to fifty miles an hour?  This speed, it is urged, was so great that the momentum of it could not be overcome by the engineer after he saw the team and wagon about to cross the track.  Witnesses who testified for the plaintiff below stated that the train was going at about its usual speed, and it appeared not to be behind time.  While there was considerable travel over this crossing, yet it was not in the corporate limits of a city, but in the country.  It has been held by this court that in such cases speed cannot be made an element of negligence.  In *Mo. Pac. Rly. Co. v. Moffatt*, 56 Kan. 667, 670, 44 Pac. 607, it was said:

"The crossing was in an open country, where there was no statutory or municipal regulation with respect to the speed of trains.  The demands of the public and the necessities of modern business require that such trains should be run at a rapid rate, and railroad companies would hardly be justified in slacking the speed at every such highway crossing to avoid the risk of a collision with some one who was passing over the same.  Even if the rate of speed had been pleaded as a specific act of negligence, it could hardly be held, under the circumstances, that the speed at which the train in question was run was negligent or unlawful.

The court, however, without justification, made the speed of the train an element of negligence, and the jury evidently made it a basis of recovery. In this there was error. . . . Under ordinary circumstances, in the open county, the railroad company can run as many trains and at as great a rate of speed as is consistent with the safety of its passengers.'' (See, also, *A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284, 38 Pac. 257, 45 Am. St. Rep. 278.)

Those in charge of the train seem to have done all that they could to avert the accident. Probably nothing more would have served any useful purpose.

Counsel for defendant in error insist that the carelessness of the father, who was driving the horses, cannot be imputed to the daughter who was riding by his side. This is an immaterial consideration, however, when it is found that the railway company was guilty of no act of negligence toward the occupants of the wagon.

The judgment of the court below will be reversed, with directions to enter judgment on the findings of the jury in favor of the defendant below.

All the Justices concurring.