C. L. Post, Appellee, v. Chicago & Northwestern Railway Company, Appellant.

**Railroads:** NEGLIGENCE: WARNING: EVIDENCE. One engaged in unloading coal from a freight car as the employee of the consignee, who had timely warning of the approach of a switching train, cannot complain that the warning came from some one other than the trainmen. In the instant case the evidence is held insufficient to show that a failure of defendant's employees to warn plaintiff of the approach of the train was the proximate cause of his injury.

**Same:** The evidence is also reviewed and held insufficient to show that the railway company was negligent in switching its train against

the coal car in which plaintiff was at work with such force as to cause his injury.

**Same:** CONFLICTING EVIDENCE: SUBMISSION OF ISSUE. Where the witnesses testified to and identified the same accident, the mere fact that they differed as to the exact time of its occurrence, while agreeing as to the day, did not create such a conflict in the evidence as to require submission of the issue.

*Appeal from Sioux District Court.*—HON. DAVID MOULD, Judge.

FRIDAY, APRIL 11, 1913.

THIS is an action for personal injuries alleged to have been sustained by the plaintiff while unloading a car of coal on the defendant's track at Orange City, November 9, 1909; negligence of the defendant being alleged as the cause thereof. There was a verdict and judgment for the plaintiff, and the defendant appeals.—*Reversed.*

*Gerrit Klay* and *T. E. Diamond,* for appellee.

*J. H. Hutchinson, James C. Davis, George E. Hise,* and *A. A. McLaughlin,* for appellant.

EVANS, J.—On November 9, 1909, the plaintiff was engaged in unloading a car of coal for the consignee thereof upon the track of the defendant at Orange City. He was engaged in delivering the coal by shoveling from the car into a coalhouse located about six feet from the railroad track. A gangway extended across from the car door to the side of the coalhouse. One end rested on the iron track beneath the door of the car, and the other rested on the supports attached to the coalhouse. The coal was of a character to handle readily with a shovel, and plaintiff, in unloading same, commenced at the middle of the car, and after working down to the bottom would fill a shovel, step out on the gangplank with one foot,

and toss the contents of the shovel into the coalhouse. At the time of the accident the car was about half unloaded, the coal having been removed from the center of the car so that the floor was clean. The coal remained, however, in each end of the car four of five feet deep, sloping from the bottom to the top, the level space on top being seven or eight feet long. At the time complained of a grain car was being loaded at the elevator of the Farmers' Elevator Company by Hubert Tott, a young man eighteen years of age, also in the employ of the elevator company. The grain car was east of the coal car on the same track, and a vacant space of about a car length intervened between the two cars. Plaintiff, in stepping on the gangway to deliver a shovel of coal into the coalhouse, observed Hubert Tott taking in the grain spout through which grain was discharged into the grain car. The side track to the east of the grain car curved to the south, so that plaintiff could not see the track east of the grain car. He surmised, however, that the grain spout was being taken in because the engine of the defendant was coming in to do some switching, and he accordingly inquired of Tott if such was the fact. The coalhouse and the elevator were on the north side of the track on which these cars stood. Being informed by Tott that the switching train was coming, the plaintiff threw down his shovel and released the platform, and then undertook to "climb almost to the top of the coal to get his coat." While he was in that position the switching train struck his car, and the jar caused his head to strike against the rafters, from which he received a scalp wound. The grounds of negligence charged in the petition were (1) that the defendant failed to give the plaintiff notice or warning of the approach of the switching train; (2) that the switching train struck the plaintiff's car with undue force or impact. At the close of all the evidence the defendant moved for a directed verdict, on the ground, among others, that there was no evidence that the plaintiff's injuries were caused by any act of negligence on the part of the defendant. Other grounds of the motion need not be

stated at this point. The motion was overruled by the trial court. The question is now submitted to our consideration, and involves an examination of all the evidence relating thereto. The only testimony in support of the alleged negligence was that of the plaintiff himself. It seems unavoidable that we set out such testimony quite fully.

The following excerpts therefrom comprise all that is material to the question:

As I was shoveling I happened to notice a son of Mr. Tott's south of the elevator where he was loading grain. I asked him if they were going to switch, and I heard him reply and I made up my mind that he said 'Yes,' so I throwed down my shovel, and took away the platform and grabbed for my coat, but before I could get my coat I was knocked up against the ceiling of the car, one of the cross-beams; then I was unconscious for a short while; then I came to my mind, and grabbed for my coat, and after I had my coat on I got out of the car, and it was moving slowly as it approached the crossing, almost a car length from the hole where I was shoveling in the coal. . . . The platform I had removed was the one between the car and the bin I stood on to shovel. I would naturally stand with one foot on this platform shoveling into the bin. I saw Mr. Tott's son remove the spout from one of the cars beyond mine, and I asked him if they were going to switch. I could not very well understand what he said, but I made up my mind that they were going to because he would not otherwise take out the spout. They were loading the car with grain, and I thought he said 'Yes,' they were going to. I could not exactly say the words. . . . The car door on the south side of my car was closed, and there was no opening at the south end of the car. . . . The only reason why I thought they might switch was because I saw Mr. Tott's son remove the spout from the car beyond mine. I then threw the shovel aside, pushed the platform out, and was about to get my coat which was hanging up inside of the car overhead of the coal. Whether it was lying on the coal I do not know, but I had to get on the coal in order to get it. I had to climb almost up to the top of the coal to get my coat. When I got my coat, the car was struck. At the time I was facing east. . . .

The coal I was unloading on November 9th was common soft coal. I handled it with a shovel. It was in small pieces, and it was in a box car. When I started, I had to work down from the middle of the car, and I put a platform outside to stand on while I was doing it. After getting into the car I would stand in the car. I think I commenced unloading that car on the afternoon of November 8th, and had about half of the coal out when the accident happened. The floor of the car in the center was all cleaned up, and the coal was in a pile in each end. After getting to that point I would stand in the car and shovel into the bin, but I had to step out on the platform to throw the coal into the bin. The platform rested on the iron that the car door slid on. It was loose at the other end, and in taking it up I would let it drop between the car and the bin, or pull it into the car. On the occasion when the boy told me the engine was coming in, I took up the platform and let it drop. It did not take long. I did it very quickly. My coat was in the east end of the car, and I was working there in my shirt sleeves. Shoveling coal was pretty warm work. It made me sweat some, and I was a little warm, but I had the south door of the car closed. . . . I could have opened the door if I wanted to, but I did not want to because it was cold and cloudy. The coal in the east end of the car was as high as they would allow them to have it. I guess about half way between the bottom and the top, about half full. . . . That coal sloped from the top down to the floor, and was not straight up and down. I had to climb up that slope to get my coat. I did not climb clear to the top of the coal. I could not get there before I was thrown up to the ceiling. I had not got hold of my coat yet. I am not sure whether the coat was hanging on a nail or was on the coal. . . . The bump lifted me up. I was thrown up against this cross-piece by the jar of the car. I was on the slope, and I don't know how close my head was to the top of the car when the jar came, but it was not as high as the rafter. I don't have any idea how far my head was below the rafter. So far as I know, my head may have been fully as high as the rafter. I don't know whether I would expect a jar on the end of the car to lift me upward or not. I do not know how I would judge of the jar, except from the fact that I went up against the ceiling. When my head struck the car, I became unconscious. I did not know anything

when I was unconscious. . . . My head struck the car before I knew it. It was a hard bump as shown by the wound I got, and the unconsciousness I got. That is the only reason I have for thinking it was a hard bump. I did not see how fast the engine was coming, or how many cars were coming with it. I don't know what you railroad men call a hard bump. . . . At the time I removed the platform from between the car and the coal bin, I did not look back to see how far the engine was away. As I threw out the shovel of coal, I happened to see Hubert Tott getting the spout out. It was just about a car length between his car and mine, and there was not anything between. When I saw him take his spout down, I supposed the engine was coming in, and I asked him if the engine was coming, and I understood him to say it was coming, and after that I laid down my scoop and picked up this platform and dropped it down between the car and the bin, and then started to climb up on the coal, and the bump came. I asked Hubert Tott if the engine was coming in for fear they were going to switch, and he answered me back, as I understood it, that the engine was coming. I then laid down my scoop, dropped the platform between the car and the bin, and turned to walk up on the coal to get my coat, and before I got my coat the bump came. That is about the way the thing happened, so far as I can recollect. The track curves to the south as you come east. I expected the engine to come from the east.

The only other evidence on the subject is that of Hubert Tott, who testified as follows:

I was loading grain right next to the elevator, and Mr. Post was unloading coal in the coal chute on the same track my car was on, and about a car length away to the west. I did not say anything to him about the engine coming in that morning until they were coming into the yards, and he asked if it was coming in, and I said it was. At that time he was standing in the doorway of his car, that would be on the north side. At that time I was going to take my spout down. At that time the engine was on the track going towards the switch. It was on the side track on the other side of the main line. It had to go to the east end of the yards to get to the switch, and then go in along the elevator. To do that it had

to go across the main line.  The switch it had to go through
was between 600 and 700 feet east of Mr. Post's car.  It prob-
ably took five minutes from the time I told him the engine
was coming in until the engine did come in to my car.  The
engine came in in just the ordinary way they always did.  It
was pushing some cars at the time it struck my car.  It
struck my car the ordinary way, just about the same as usual
to make the coupling.  They kept on moving slowly after
coupling on to my car.  They coupled on to Mr. Post's car.
I did not see it strike the car, but the way I seen other cars
they were pushing, they were going about the same way they
hit my car.

Looking to the evidence of plaintiff alone, it appears
clearly therefrom that he was warned by Tott of the approach
of the switching train before he put himself in a position of
peril by climbing to the top of the coal to get his coat.  There

1. RAILROADS:  was a car length between his car and the grain
negligence:  car at the elevator.  He had laid aside his
warning: evi-
dence.  shovel, and had disconnected the gangplank
after he knew of the approach of the train.  It is undisputed in
the evidence that at this point he was not exposed to any peril
from the approach of the switching train, and this is so whether
he had left the car or remained therein.  Whatever the proxi-
mate cause therefor of the plaintiff's injuries, it was not a want
of notice of the approaching switching train.  If the plaintiff's
position on top of the coal was perilous, and if he were other-
wise entitled to warning and time to extricate himself there-
from, yet under his own evidence he had the warning before
he put himself in such position.

We may ignore at this point the testimony of the brake-
man to the effect that he had passed that way and given plain-
tiff warning.  Inasmuch as he had the warning, it is immate-
rial whether he received it from Tott or the brakeman.  *Reilly
v. Railway Co.*, 122 Iowa, 525; *McGill v. Railway Co.*, 113
Iowa, 358; *Railroad Co. v. Judah*, 65 Kan. 474 (70 Pac. 346).
It necessarily follows that this ground of alleged negligence is
not available herein.

We turn, therefore, to the second ground. Was there any evidence of negligence by undue force or impact? All the evidence on that subject is contained in the excerpts we have already quoted. Only the witness Tott testifies directly on that, however, and his testimony is adverse to the plaintiff. The testimony of the plaintiff himself on the question is as follows: "I do not know how I would judge of the jar except from the fact that I hit my head up against the ceiling. When my head struck the car, I became unconscious. My head struck the car before I knew it. It was a hard bump as shown by the wound I got and the unconsciousness I got. That is the only reason I have for thinking it was a hard bump. I did not see how fast the engine was coming or how many cars was coming with it." He also testified: "I was unconscious for a short time, then I came to my mind and grabbed for my coat, and after I had my coat on I got out of the car. It was moving slowly as it approached the crossing almost a car length from the hole where I was shoveling in the coal." This latter testimony of the plaintiff is quite in harmony with the testimony of Tott, to the effect that the movement of the train was slow. It will be seen from the foregoing quotations from the plaintiff's evidence that he bases his claim of undue force solely upon the fact that he was hurt by the jar. Granting for the sake of argument that the injury itself might be of such nature and extent as to afford of itself evidence of undue force or impact, the injury in this case was described by the plaintiff's physician as a witness to be a scalp wound "about two inches long" and was "only through the skin." "There was an ooze of a red color, but not a liberal hemorrhage. It was dressed with adhesive plaster." There was nothing, therefore, in the nature of the wound which can be said to furnish any evidence on the question of whether there was an undue impact. We feel compelled, therefore, to say that the record disclosed no evidence in support of this ground of negligence.

It is strenuously urged by the plaintiff that there was a

2. SAME.

conflict in the evidence, and that, therefore, it was a question for the jury. The conflict pointed out is that the plaintiff testified that the accident occurred in the afternoon, whereas Tott's recollection was that it occurred in the forenoon. The same crew and same train passed through the town in the forenoon and again in the afternoon on their return trip. As regards that feature of the case under present consideration, the conflict pointed out is clearly immaterial. Both witnesses identify the particular event. The plaintiff went to the elevator, and exhibited his injury to Tott, according to his own testimony, immediately after it occurred. Its identity is not put in question, but the witnesses differ in their recollections as to whether it occurred in the forenoon or afternoon. Though the accident occurred in November, 1909, the suit was not brought until February, 1911, and the trial was not had until September following. There was therefore abundant room for discrepancy as to the hour of day. Accepting the contention of the appellee as a witness, as we are bound to do, that the accident occurred in the afternoon, it adds no whit to his case. It is our conclusion that there is a failure of proof on the question of negligence, and that a verdict should have been directed for the defendant on that ground.

3. SAME: conflicting evidence: submission of issue.

In view of this conclusion, it seems hardly necessary that we should give consideration to other questions argued.

For the reason indicated, the judgment must be *Reversed.*