THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. GEORGE W. WILLEY.

No. 11314.

RAILROADS—*Injury at Crossing—Duty of Traveler.* When a traveler on a country highway comes to a railway-crossing with which he is familiar, knowing that a train is about due at that point and liable to pass at any time, it becomes his duty as an act of ordinary prudence to look and listen for its approach; and if the sense of sight be unavailing because of obstructions to the view, and the sense of hearing unavailing because of preventing noises, it becomes his duty, as a further act of ordinary prudence, to stop in order better to enable him to look and listen before entering upon the crossing; and in such case, if by stopping he can see or hear the approaching train, but fails to do so, his negligence in such respect should be declared as a matter of law, and not left to the determination of the jury as a question of fact.

Error from Sumner district court; W. T. McBRIDE, judge. Opinion filed October 7, 1899. Reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*George & Schwinn,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This is the second time we have been compelled to review this case. (*Railroad Co. v. Willey,* 57 Kan. 764, 48 Pac. 25.) The showing of

facts is substantially the same in general outline now as before. However, the question of the negligence of plaintiff below, the defendant in error here, is more sharply defined by the special interrogatories and answers than upon the former hearing. On that hearing the matter principally discussed was the question of the liability of the railroad company, as matter of law, for maintaining a hedge and growth of trees upon its right of way, whereby obstructions to the sight and hearing of its trains existed as to travelers upon the country highway. The case as now presented brings before us the question of the legal duty of defendant in error, under the circumstances disclosed by the findings, to stop, as well as to look and listen, before undertaking to cross the railroad-track.

Summarized, the findings of the jury were that the railroad-track ran nearly north and south, and the train which injured the defendant in error was going north. The defendant in error was traveling upon the highway which ran east and west. He had been traveling upon one which ran north and south, nearly parallel with the railroad-track, but 250 feet from the railway-crossing he turned to the east. From this point of turning the view of the railroad-track in the direction from which the train was approaching was obstructed by a grove of trees and a hedge running east and west to a point twenty-eight feet from the nearest or west rail of the railroad-track. There were certain places in this 250 feet line of hedge and trees where the defendant in error could have seen the approaching train if he had looked, but he did not look. However, as to the existence of places in the hedge through which he could have looked there is a contradictory finding. He could not hear the ap-

proaching train because of the noise of the wind in
the grove of trees, but he was familiar with the cross-
ing and all its surroundings, and knew that a train
was liable to pass at any time.   The train did not
sound the whistle or give any warning of its approach
to the crossing.   If the defendant in error had stopped
his team just before it passed the east end of the
hedge, which as before stated extended to a point
twenty-eight feet from the nearest railroad rail, and
either looked or listened for the approaching train, he
could have seen or heard it ; however, he did not stop
but drove on beyond the end of the hedge and when
he was within twenty-five feet of the nearest rail of
the track discovered the approaching train seventy-
five feet distant.   The team was trotting at the time.
Whether it was then too late to check the horses be-
fore they entered upon the track we are not informed.
There is no special finding on that question, but
the negative of it is perhaps implied in the general
verdict and we shall so regard it.   The record does
not contain the evidence, and all matters of fact are
shown by the special interrogatories and answers.
On the facts thus shown the plaintiff in error contends
that judgment should have been pronounced in its
favor, for the reason that the defendant in error was
guilty of contributory negligence in failing to stop in
order better to look and listen for the approaching
train before entering upon the railroad-track.

The question of the duty of travelers upon public
highways to stop before undertaking to cross railroad-
tracks has frequently been considered by this court,
but in none of the cases did the facts justify us in
holding, as matter of law, that the duty to stop in
order to look and listen was incumbent upon the in-
jured person.   However, it was not denied in any of

them that the court might, on a sufficient showing of facts, determine the legal obligation, but, on the contrary, it was at least inferentially stated in all of them that cases might arise so clear and free from doubt in point of fact as to enable the court to resolve the question as one of law. (*C. K. & W. Rld. Co. v. Fisher*, 49 Kan. 460, 30 Pac. 462; *A. T. & S. F. Rld. Co. v. Hague*, 54 id. 284, 38 Pac. 257; *C. R. I. & P. Rly. Co. v. Williams*, 56 id. 333, 43 Pac. 246; *C. R. I. & P. Rly. Co. v. Hinds*, 56 id. 758, 44 Pac. 993.) Of the cases cited, the one which came the nearest to justifying the application of the rule of legal duty to stop was *C. R. I. & P. Rly. Co. v. Hinds*, supra. It appeared in that case that the view of the track was obscured by a thick growth of tall sunflowers, and that a high wind was blowing at the time, ᵗ   ˥ing it difficult to hear the noise of approaching ᵾ. The locomotive whistle was not sounded or otheᵣ warning given. Thus far stated, the case is identical in point of fact with this one, but it further appeared that the highway crossing where the accident occurred was a village street 485 feet distant from the railroad depot, and that the train causing the injury was moving backward at the rate of thirty miles an hour. Under these circumstances, it was held that the court did not err in leaving to the jury the question of the injured man's duty, as a reasonably prudent person, to stop before going upon the crossing, the court remarking in the opinion that " a reasonable man would hardly expect to meet a train running backward past a depot at so high a rate of speed, where the track was obscured, without any warning of its approach." However, cases do arise which impose upon the courts the obligation to declare the rule of legal duty resting upon travelers to stop at highway-crossings. Judge

Elliott, in his recent work on Railroads, section 1167, says :

"Ordinary care often requires that the traveler should stop, look and listen for moving trains, from a place where danger can be discerned and precaution taken to avert it. If, for instance, the noise is so great that an approaching train cannot be heard, or the obstruction such that it cannot be seen, then the traveler must come to a halt and look and listen. It cannot be said that one who simply looks and listens where such acts are fruitless and unavailing exercises that degree of care which the law requires. While it cannot be justly affirmed, as we believe, as matter of law, that there is a duty to stop in all cases, yet there are cases where the failure to stop must be deemed such a breach of duty as will defeat a recovery by the plaintiff. There are very many cases holding that the surroundings may be such as to impose upon the traveler the duty of stopping, looking, and listening, and these cases, as we think, assert the true doctrine. Some of the courts, in well reasoned cases, press the rule further, and hold that the traveler must, in all cases, stop, look, and listen. As we have said, we do not think that it can justly be affirmed, as a matter of law, that there is a duty to stop in all cases ; but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that where the surroundings are such that but one conclusion can be reasonably drawn, and that conclusion is that it is negligence to proceed without halting, the court should without hesitation direct a verdict if no halt is made."

It is undeniable, therefore, that if in a given case the court could know all the facts as well as the jury knows them, and but a single deduction could be drawn from such facts, the question would become one of law for the court's determination. (*K. P. Rly. Co. v. Pointer*, 14 Kan. 38, 53.) It is only when the court does not know all the facts as well as the jury,

or, if knowing all of them, different minds might deduce different conclusions, that the question of a traveler's obligation to stop at a highway-crossing belongs exclusively to the jury. However, in this case enough of the facts were found and stated by the jury to enable us to know the situation surrounding plaintiff at and preceding the time of the accident as well as they knew it, and knowing the facts as the jury knew them we believe all reasonable minds, if guided by correct legal rules, would arrive at the same conclusion.

We pass by the fact, as found by the jury in one instance, that there were places in the hedge and grove of trees through which the plaintiff could have seen the approaching train had he looked, and treat the case as though the jury had found, which it did in another instance, that he could not see the approaching train because of the grove of trees and hedge. The pertinent facts, then, are that the plaintiff below could not see the approaching train because of obstructions to his view, nor could he hear it because of the noise of the wind in the grove of trees. He was, however, familiar with the crossing and all its surroundings. He knew that a train was liable to pass at any time. He knew that he could neither see nor hear its approach. He could, however, have seen or heard it if he had stopped just before his team passed the end of the hedge nearest the track, which point was twenty-eight feet from the nearest rail. He knew that he could not, for the reasons stated, either see or hear an approaching train without stopping at or about the end of the hedge. Under these circumstances the legal proposition of his obligation to stop, in order to assure himself of safety, is unquestionable. The law first laid him under the obligation to look

and listen.  This is undisputed.  The exercise of the
senses of sight and hearing were unavailing, and were
known by him to be unavailing.  The very contin-
gency, then, in which the law laid him under the
necessity of further precaution arose.

When this case was before us at the former hearing,
I took occasion to remark, as the rule of legal policy in
all such actions, that "regard for one's own personal
safety and that of others to whom he may stand in dan-
gerous relations, requires the exercise of diligence and
caution ; and the policy of the law should be to impose
penalties upon the negligent injurer and likewise to
withhold relief from the negligent sufferer."  This I
again repeat, and it cannot be too strongly impressed
upon the minds of persons traveling over railway-cross-
ings.  In this case not only was the duty of the plaintiff
to stop before going upon the crossing inferable from
the facts which we have principally commented on, but
the jury trying his case specifically declared as a mat-
ter of fact that if he had stopped he could have seen
or heard the approaching train, and of course could
then have avoided the accident.  "Q.  If the plaintiff
had stopped the team just before it passed the east end
of the hedge just west of the crossing where the acci-
dent occurred and either looked or listened for the ap-
proaching train from the southwest, could he have
seen or heard the train approaching?  A.  Yes."

One of the jury's findings was that the plaintiff
knew that a train was liable to pass at any time, and
this is interpreted by his counsel to mean knowledge
of the passing of a train as a possible occurrence.
We do not so view it.  Railway trains are liable to
pass at any time.  They do not always run on schedule
time.  They frequently run behind time, and oc-
casionally for some special reason run ahead of time,

and they often run as extras upon telegraphic orders from station to station without a schedule of time. To say that the plaintiff knew that a train was liable, as a fortuitous circumstance, to pass at any time, is to say nothing possessing any relevancy to the case. What the jury meant was that the plaintiff knew that the train in question was liable to pass the crossing in question at the time in question, because such was its accustomed time.

The question of the right of the plaintiff in error to judgment upon the specially found facts notwithstanding the general verdict is the only one presented to us for review. That, for the reasons above given, is necessarily determinable in its favor, and the judgment of the court below is therefore reversed, with directions to sustain the defendant's motion for judgment upon the special findings.