THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. B. W. ROTH, as Administrator, etc.

No. 16;160.

SYLLABUS BY THE COURT.

JURY AND JURORS—*Special Findings Inconsistent with General Verdict—Negligence—Personal Injuries.* Where in an action for damages against a railroad company, commenced by the legal representative of an employee who was killed while in the employment of such company, special questions are submitted to the jury, among which is one requesting them to state in what the negligence consisted, giving the name of the officer or agent who was guilty of such negligence, and the answer is, "By slowing down and then increasing the speed of east-bound freight by engineer Gibbs," such answer does not state any negligence; and where no other facts of

negligence are found specially a judgment can not be entered against the defendant, notwithstanding a general verdict in favor of the plaintiff.

. Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed October 9, 1909. Reversed.

## STATEMENT.

E. E. ROTH was head brakeman on a freight-train operated on the defendant's railroad. On January 13, 1907, his train became disabled and was compelled to take a side-track at Mission Siding. At this time a train from the west was due at that station, and Roth was sent forward to flag and stop the coming train until the main track could be cleared. It was in the evening, after dark, and he carried a red light and a white light. In going to the point where it was necessary to give the signal he was compelled to cross a trestle bridge about 150 feet long. The bridge was not supplied with planks upon which people crossing it could walk and therefore it was necessary to step from one tie to another. He crossed the bridge and proceeded west, but before he reached the point where he was to give the signal the engineer in charge of the incoming train had discovered the signal given at the station semaphore and at once shut off steam preparatory to making the stop; but before the brakes were applied he was notified by the same signal that the track was open and he could proceed. The steam was applied again immediately, and the train moved forward without its speed having been materially diminished. Roth, at about the same time, was signaled to come back to his train, and he was seen soon afterward going in that direction, near the bridge. He was afterward found dead at the bottom of the rocky ravine, under the east end of the bridge, about twelve feet west of its east end. The ravine is from twenty-

two to twenty-four feet deep. The bridge is so narrow that a person can not remain on it while a train is passing. The jury in their special findings say that Roth saw the approaching train before he went upon the bridge..

About the time the engineer of the incoming train observed the signal that the track was clear he saw a red and a white light on the track, which he knew to be in the hands of a flagman from the train at the station, and he heard the signal given for the flagman to return. He saw, the lights turn off the track to the north and did not see them again. The engineer of Roth's train saw lights which he supposed to be those carried by Roth, and he took them to be on the bridge. The engineer of the train incoming says that Roth was not on the bridge when his train crossed; that it ran over the bridge at the rate of twenty to twenty-five miles an hour. No witness saw Roth and the train on the bridge at the same time. The engineer of Roth's train saw Roth on the bridge and the train 800 or 900 feet behind him. The jury returned special findings of fact which read:

"(1) Ques. Was the deceased acting as head brakeman at the time of the accident on an extra freight-train going west, said train running between Newton and Hutchinson? Ans. Yes.

"(2) Q. Did the defendant's track at Mission Siding consist of one main track and a switch, or side-track? A. Double track and side-track to Mission station and single track west of Mission.

"(3) Q. Did the freight-train mentioned in question No. 1 pull in on the side-track, or switch, at Mission Siding? A. Yes.

"(4) Q. Was not the said train stopped when it reached Mission Siding for the purpose of placing it on a side-track, or switch? A. Yes.

"(5) Q. While said train was being taken from the main track to the side-track, or switch, did not the deceased go up the track west to a point west of the bridge? A. Yes.

"(6) Q. If you answer the last question 'Yes,' then state if deceased did not cross the bridge while going to the point west of said bridge. A. Yes.

"(7) Q. If you answer question No. 6 'Yes,' then state for what purpose the deceased went up the track to the west while said train was being placed on the switch, or side-track. A. For the purpose of flagging east-bound extra freight-train.

"(8) Q. At the time it is claimed deceased was hit by defendant's engine, was he not going east on the bridge, intending to return to his train? A. Yes.

"(9) Q. If you answer the last question in the affirmative, then state if the deceased saw the train that it is claimed struck him before he went upon said bridge. A. Yes.

"(10) Q. Was the track from Mission Siding west to the point where the deceased went comparatively level? A. Yes.

"(11) Q. Was the track between the two points mentioned in the last question comparatively straight? A. Yes.

"(12) Q. State how long deceased would have been delayed had he waited for the train to pass before going on the bridge. A. Probably two or three minutes.

"(13) Q. Was the defendant guilty of negligence toward the deceased? A. Yes.

"(14) Q. If you answer the last question in the affirmative, then state in what such negligence [consisted], and the name or names of the officer or agent or employee of the company that was guilty of such negligence. A. By slowing down and then increasing the speed of east-bound freight by engineer Gibbs.

"(15) Q. Did not the east-bound train, from the time it passed the curve west of Mission Siding until it reached the bridge, run at practically the same rate of speed? A. Yes.

"(16) Q. How far is it from the west end of the side-track, or switch, to the east end of the bridge? A. About 600 feet.

"(17) Q. In passing over said bridge, could not deceased have observed that there was no place for a person to stand in safety while a train was passing over said bridge? A. Yes.

"(18) Q. Was this bridge negligently constructed? A. Yes.

"(19) Q. If you answer the last question in the affirmative, then state wherein it was negligently constructed. A. In not constructing foot-walks on outside of bridge or between the rails or any place where an employee could with safety stand while a train was passing, on account of nearness to Mission station.

"(20) Q. Was not this bridge a standard trestle bridge? A. Yes.

"(21) Q. Is not this bridge constructed like all other trestle bridges on the Santa Fe system? A. Yes.

"(22) Q. Do not all railroad companies in this locality use and maintain trestle bridges like the one in question. A. Yes."

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the plaintiff in error.

*L. B. Kellogg, J. Jay Buck, S. S. Spencer, M. M. Suddock,* and *C. M. Kellogg,* for the defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The defendant contends that there is an entire absence of proof tending to establish negligence upon its part, and that there is a conclusive showing of contributory negligence upon the part of the deceased. It has also been urged that the jury found that the bridge was negligently constructed, as alleged in the petition; but it is not intimated that this condition of the bridge had anything to do with the injury of which complaint is made.

These propositions are strongly presented. It is unnecessary, however, for us to place the decision of the case upon either of these contentions, as it can be disposed of upon the findings of fact. Questions numbered 13 and 14 and the answers thereto were intended to elicit a full statement of the facts constituting the defendant's negligence, but no facts are stated which can be construed into negligence. They read:

"(13) Ques. Was the defendant guilty of negligence toward the deceased? Ans. Yes.

"(14) Q. If you answer the last question in the affirmative, then state in what such negligence [consisted], and the name or names of the officer or agent or employee of the company that was guilty of such negligence. A. By slowing down and then increasing the speed of east-bound freight by engineer Gibbs."

The mere slowing down and then increasing the speed of a train moving under ordinary conditions on the main track does not constitute negligence. Under some circumstances it might be negligence, but here no such circumstances are stated. The jury do not state how this act of the engineer affected Roth or in any way contributed to his death. The same is true of the construction of the bridge. The fact that it was negligently constructed is immaterial unless it contributed to the accident. In this respect the general verdict is not sustained by the special findings, but is inconsistent therewith.

The judgment of the district court is reversed, with directions to grant a new trial and proceed in accordance with the views herein expressed.