Tecza v. Sulzberger & Sons Co.

---

No. 18,751.

MIKE TECZA, *Appellee*, v. SULZBERGER & SONS COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Negligence—Insufficient Light—Personal Injuries—Proximate Cause*. The evidence held sufficient to justify a finding that negligence of an employer in not providing sufficient light was the proximate cause of an injury to an employee.

2. SAME—*Assumption of Risk*. The fact that an employee has worked for years under the same conditions does not necessarily preclude his recovering damages against his employer upon the ground of negligence in failing to provide sufficient light, apart from any consideration of complaint on his part, or of any promise to repair the defect.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed April 11, 1914. Affirmed.

*Clinton Angevine, J. K. Cubbison*, and *W. G. Holt*, all of Kansas City, for the appellant.

*David F. Carson*, of Kansas City, for the appellee.

7—92 KAN.

The opinion of the court was delivered by

MASON, J.:    Mike Tecza recovered a judgment against Sulzberger & Sons Company on account of personal injuries received while in its employ. The defendant appeals.

The evidence tended to show these facts: The plaintiff's duties required him to overhaul hams while in the process of pickling. This involved changing them from one hogshead or vat to another. The vats were arranged in double rows—one row on top of the other—in a room about 100 feet square. Each vat was three feet and seven inches high, and three feet five in diameter, weighing about 300 pounds, and holding about 1400 pounds of hams, besides the brine poured over them. The plaintiff was engaged in removing one of the upper vats. He undertook to shift it from the top of two other vats to a truck of the same height, and in so doing fell and received the injuries on which he based his action.

The petition alleged various forms of negligence, including lack of light, insufficient help, projecting nails on the vat, and worn-out flooring, made slippery by water and grease. In answer to a question requiring them to state fully of what the defendant's negligence consisted, the jury answered: "Insufficient light." This excludes other forms of negligence, and the judgment must be reversed unless it can be sustained upon that theory. (*Sugar Co. v. Riley*, 50 Kan. 401, 406, 31 Pac. 1090; *Plummer v. Railway Co.*, 86 Kan. 744, 745, 121 Pac. 906; *Hayden v. Railway Co.*, 87 Kan. 438, 124 Pac. 165.)   The plaintiff contends that the question was one that ought not to have been submitted, under the rule that the jury should not be cross-examined by questions relating to matters of evidence. (*Madison v. Railway Co.*, 88 Kan. 784, 129 Pac. 1157.)   This, however, was a fair question, relating to one of the ultimate and vital issues of the case. In saying that the negli-

Tecza v. Sulzberger & Sons Co.

gence of the defendant consisted in failing to furnish sufficient light, the jury must be deemed to say that their verdict is not based upon any other form of negligence.

The two principal questions upon which the case turns are: (1) Was there any evidence that the deficient light was the proximate cause of the plaintiff's injury? and (2) if so, must the plaintiff be regarded as having assumed the risk resulting from that deficiency?

The plaintiff did not in so many words say that his fall was caused by the want of light. He testified that but one electric light was supplied, to light the place where he was at work, and this was fifty feet away; that there were sockets for others, but they were not in use; that he was furnished a coal-oil lantern, which he hung near where he was working; that the floor was wet and greasy and that there were holes in it. He gave his testimony through an interpreter, who rendered his answers sometimes in the third and sometimes in the first person. Substantially all the evidence on the subject of the manner of his injury is contained in these extracts from the record:

"Q. Show us there how you did it, used the truck, tell how you did it. A. He was pushing that way on the truck.

"Q. Edging it off that way? A. Yes, sir.

"Q. What happened when you got it out that way? A. He said that is the way it started in on the truck (witness here illustrates), like that the way he is showing you, then he could not push it any further, then that truck backed this way and that fell over, then that hurt him right on the side.

"Q. What caused you to fall? A. There was because of that—because when the truck went back then the truck hit him and he fell right over onto the barrel.

"Q. What made you fall over? A. Because his foot slipped.

"Q. Tell the jury whether or not you could see the floor and see all of those things at the time you were working there. A. He said he could n't see nothing along there, all round, just what he seen from the light that was on the barrel.

"Q. Tell the jury whether or not you saw that fat and saw those holes down there under where you were standing. A. He said it was too dark to see over.

"Q. At the time of the accident did you step on a piece of fat that caused you to slip? A. I could not tell, because when I was moving those vessels my foot slipped and then I fell.

"Q. Your foot slipped on the floor, did it? A. When the truck slipped back and the vat moved and my foot slipped, then I fell.

"Q. Was the floor slippery at the place where you were standing at the time of the accident? A. It was pretty dark and I could not see everything there, because it was wet and damp."

We conclude that this evidence is sufficient to justify a finding that the plaintiff's fall was caused by insufficient light. The precise way in which the accident occurred is not clear, but there is room for the inference that a better light would have enabled the plaintiff to secure a firmer footing, and to move the vat in such a manner as to retain a surer balance.

The plaintiff had worked for seven years under substantially the same conditions. He testified that he had complained of the absence of light and of the other matters referred to in the petition, and that he had been promised that changes should be made. On cross-examination he said that these complaints and promises were made on every day for seven years. It is argued that the defense of assumption of risk can not be defeated by a showing of a promise to repair, the performance of which was so long deferred. The jury were not required to take literally the statements concerning the period over which the complaints extended, especially in view of the manifest difficulty the plaintiff had in comprehending the questions asked and in making his answers intelligible. But apart from this consideration we think the defense of assumed risk was not conclusively established. In order that a recovery shall be defeated upon that ground the plaintiff must not only have known of the existing conditions—he must also

have realized and appreciated the danger that resulted from them. (26 Cyc. 1199.) This is not necessarily established by the fact that he made complaint; in doing so he may have had in mind merely the inconvenience that resulted from the want of additional lights. The matter of making the place safe to work in was not his problem. He was not required to take notice of any but the most obvious dangers. But much more than this was required of the employing company. It was under an obligation to consider carefully whether existing conditions involved any unnecessary danger— to use all reasonable care to see that the place was made safe, not only with respect to apparent risks, but also with respect to any that were latent. (*King v. King,* 79 Kan. 584, 100 Pac. 503.) It can not be said as a matter of law either that the danger resulting from insufficient light was so obvious that the plaintiff must have known of it, or that it was so remote that the defendant could not be charged with knowledge of it. Both questions were for the jury.

Objection was made to the testimony of a physician concerning the plaintiff's condition on the ground that it was founded in part on the subject's own statements. The record as a whole, however, seems to indicate that this was not the case. Complaint is made of the restriction of the cross-examination of the plaintiff with respect to the use of benches in place of the trucks some years before. We think no substantial prejudice is shown in this connection. The petition alleged that the projecting nails from the lower hoops of the vat caught upon the truck, causing it to move, and thereby occasioned the accident. It is argued that no recovery could be had except upon proof of this fact. The petition also alleged generally that the injury happened by reason of all the acts of negligence set out. We think no fatal variance is shown. In one place in the charge it was said that it was the duty of the defendant to furnish the plaintiff a reasonably safe place in which

to work. The defendant thinks this exacted too high a standard of diligence. If the instruction was not technically accurate it was not prejudicial. (*Kamera v. Boiler Works*, 82 Kan. 432, 108 Pac. 806; *Reynolds v. Mining Co.*, 90 Kan. 208, 133 Pac. 844.) Complaint is made of the failure of the court to require more definite answers to special interrogatories submitted to the jury, to which they replied: "We do not know." No request on the subject was made at the time, the defendant's counsel not being present. The answers being equivalent to a simple negative there was no occasion for the court to send the jury back on its own motion. The jury were told that in certain circumstances the plaintiff would be regarded as having assumed the "ordinary" risks of his employment, and could not recover for any injury resulting therefrom. The use of the word "ordinary" is complained of, but we think it was not misleading under the facts of this case. Among other issues submitted was the question whether nails projected from the barrel and caught on the truck. This is objected to on the ground that there was no evidence of any such projecting nails. One witness, however, testified that some of the vats had loose brads or nails. The matter is of the less importance because the jury rested the verdict upon negligence in failing to provide more light.

The judgment is affirmed.

PORTER, J., dissents.