No. 19,056.

J. R. ADAMS, *Appellee,* V. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. RAILROAD—*Injury at Crossing—Duty of Traveler to Look and Listen for Approaching Trains.* The rule stated in the case of *Railroad Co. v. Willey,* 60 Kan. 819, 58 Pac. 472, relating to the duty of a traveler about to cross a railway track to look and listen for an approaching train, and if sight and hearing are obstructed to stop in order to better enable him to look and listen, applied.

2. SAME—*Negligence Specified in Jury's Findings—Excludes all Other Negligence.* The rule stated in the case of *Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 98, 140 Pac. 105, that by a specific finding of negligence, made in response to a request to state what the negligence of the defendant was which caused injury to the plaintiff, the jury must be deemed to say their verdict is not based upon any other form of negligence, applied.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed December 12, 1914. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*A. E. Dempsey,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff recovered damages for injuries sustained through a collision with one of the defendant's trains at a highway crossing. The defendant appeals.

The petition alleged that the highway extends along one side of a high and rocky ridge; that the railway track crosses the highway at right angles and is laid in a deep and narrow cut through the ridge which opens abruptly on the highway; and that travelers on the highway can not see or hear an approaching train until they are quite up to or upon the railway track because of the configuration of the land and because of a thick growth of shrubbery upon it. The petition contained the following charges of negligence on the part of the railway company, which the court submitted to the jury: Failure to restore the highway to its former state of usefulness by grading down the walls of the cut and removing obstructions to sight and hearing; failure to sound the whistle eighty rods from the crossing, and failure to ring the bell as the train which struck the plaintiff approached the crossing; failure to keep a watchman at the crossing, or to provide a signal of some kind at the crossing, or to give warning of the approach of trains such as the situation demanded. The petition charged that the train was running at the reckless rate of thirty miles per hour, but the instructions did not refer to speed or excessive speed as a ground of negligence authorizing recovery.

The answer denied negligence on the part of the defendant and charged negligence on the part of the plaintiff.

With a general verdict for the plaintiff, the jury returned the following special findings of fact: .

"Q. 1.  Did the accident occur on January 5th, 1912, at about 3:20 P. M. of said day?  A.  Yes.

"Q. 2.  Was the plaintiff's eyesight good?  A.  Yes.

"Q. 3.  Was the plaintiff's hearing good?  A.  Yes.

"Q. 4.  Had the plaintiff, in the neighborhood of once a week, from the time he could remember, passed by and over said crossing?  · A.  Yes. ·

"Q. 5.  Had the plaintiff for the past ten years been familiar with and knew that the crossing in question was dangerous.  A.  Yes.

"Q. 6.  Was it not usual for the defendant to only operate one train each way a day over the crossing at which the accident happened?  A.  Yes.

"Q. 7.  Was the train which collided with the plaintiff a regular train of the defendant?  A.  Yes.

"Q. 8.  Did plaintiff stop his team to look and listen for a train before driving up to or on said railway crossing?  A.  No.

"Q. 16.  Did the engineer sound the whistle at the quarter-mile post which post is near the Government Cut?  A.  Yes.

"Q. 17.  Was the fireman ringing the bell as they approached and went across the crossing in question?  A.  Yes.

"Q. 18.  At what rate of speed was the train going at the time it collided with plaintiff's team and sleigh?  A.  About 15 miles per hour.

"Q. 19.  What negligence was the defendant guilty of towards said plaintiff that caused the accident?  A.  The vision was obscured by frost on cab windows. ·

"Q. 20.  Did the plaintiff at any time before his team collided with the train, stop and listen for an approaching train?  A.  No.

"Q. 22.  If the plaintiff had stopped his team ten or fifteen feet south of the crossing in question and looked and listened, would he have collided with the train?  A.  No.

"Q. 23.  How long previous to the accident had the plaintiff been familiar with the crossing where he was injured?  A.  About 10 years.

"Q. 24.  Was the day at the time of the accident very cold, being five or ten degrees below zero?  A.  Yes.

"Q. 25.  Did the plaintiff at the time of the accident, have mufflers over his ears?  A.  Yes.

"Q. 26. Did the plaintiff as he approached the track and before he collided with the train, remove the mufflers from his ears and listen for a train? A. No.

"Q. 27. Was plaintiff's view of the railroad track to the east from which train approached, obstructed by a high embankment or hill? A. Yes.

"Q. 28. Did plaintiff know that such embankment or hill was there? A. Yes."

The defendant moved for judgment on the special findings but the motion was overruled.

It is quite plain that the jury in arriving at its general verdict did not appreciate, or disregarded, the plaintiff's duty to exercise care and vigilance commensurate with the hazard incident to the crossing. He could not see the approaching train because of obstructions which were obvious and with which he was perfectly familiar. The same obstructions prevented him from hearing the train. Besides this, he partially disabled himself from employing his sense of hearing and so did not make vigilant use of that faculty. In that situation, and knowing the crossing to be dangerous, he simply took chances and drove upon the crossing when a halt to look and listen ten or fifteen feet from the track would have saved him. This court has before it facts which enable it to know the situation of the plaintiff at the time of the injury as well as the jury knew it, and knowing the facts as well as the jury knew them the court concludes that reasonable minds guided by correct rules of law would reach the conclusion that the plaintiff ought to have stopped to look or listen, or both, before driving upon the track. (*Railroad Co. v. Willey*, 60 Kan. 819, 58 Pac. 472.)

In the case just cited the syllabus reads as follows:

"When a traveler on a country highway comes to a railway-crossing with which he is familiar, knowing that a train is about due at that point and liable to pass at any time, it becomes his duty as an act of ordinary prudence to look and listen for its approach; and if the sense of sight be unavailing because of obstructions to the view, and the sense of hearing unavailing

because of preventing noises, it becomes his duty, as a further act of ordinary prudence, to stop in order better to enable him to look and listen before entering upon the crossing; and in such case, if by stopping he can see or hear the approaching train, but fails to do so, his negligence in such respect should be declared as a matter of law, and not left to the determination of the jury as a question of fact."

While the circumstance that the train was about due is mentioned in stating the facts of the Willey case, it did not enlarge or diminish the duty to stop in order to make the senses of sight and hearing available. The track was a warning that a train might be approaching. (*Beech v. Railway Co.*, 85 Kan. 90, 116 Pac. 213, and cases there collated.)

"One attempting to cross a railroad-track on a public highway, who is familiar with and relies upon a rule of the company which prohibits trains from following one another within ten minutes, is guilty of contributory negligence in going upon the track without looking and listening for an approaching train; and this is true, although the train which caused the injury was a 'wild train' and followed the preceding one within one or two minutes." (*Bush v. Railroad Co.*, 62 Kan. 709, syl. ¶ 1, 64 Pac. 624.)

"It will not do to say that a person in such circumstances need only look and listen at the times when regular trains are due. It is common knowledge that trains are often run that are not upon schedule time, and that regular trains are often delayed. The plaintiff was approaching a public crossing of a great line of railway, and was thereby warned of danger; his failure to use his senses is not excused by the fact that the train was late." (*Railroad Co. v. Entsminger*, 76 Kan. 746, 749, 92 Pac. 1095.)

The plaintiff was likewise bound to assume that the speed of the train, if one were approaching, would be as great as the business or the necessities of the company required, and he was bound to act accordingly. (*Railway Co. v. Schriver*, 80 Kan. 540, 544, 103 Pac. 994.)

In the Willey case and in this case natural objects cut off a view of the railway track. In the Willey case

the plaintiff's ability to hear the approaching train was impaired because of a high wind. In this case the plaintiff's hearing was obstructed by the hill and brush which concealed the train and by the voluntary handicap of mufflers over his ears. He relied for recovery on the existence of the hill and brush, and the other obstruction was established by the proof. In the Willey case the jury found specially that if the plaintiff had stopped just before his team passed the end of the hedge which obstructed his vision and had either looked or listened he could have seen or heard the approaching train. In this case the jury found specially that if the plaintiff had stopped his team ten or fifteen feet from the crossing and had looked and listened the collision would not have occurred. The two cases, therefore, are so parallel in their essential facts and are so identical in principle that the reasoning of the court in the Willey case is conclusive here.

"The pertinent facts, then, are that the plaintiff below could not see the approaching train because of obstructions to his view, nor could he hear it because of the noise of the wind in the grove of trees. He was, however, familiar with the crossing and all its surroundings. He knew that a train was liable to pass at any time. He knew that he could neither see nor hear its approach. He could, however, have seen or heard it if he had stopped just before his team passed the end of the hedge nearest the track, which point was twenty-eight feet from the nearest rail. He knew that he could not, for the reasons stated, either see or hear an approaching train without stopping at or about the end of the hedge. Under these circumstances the legal proposition of his obligation to stop, in order to assure himself of safety, is unquestionable. The law first laid him under the obligation to look and listen. This is undisputed. The exercise of the senses of sight and hearing were unavailing, and were known by him to be unavailing. The very contingency, then, in which the law laid him under the necessity of further precaution arose." (60 Kan. 824.)

The jury by their special findings exonerated the defendant from every charge of negligence specified

either in the petition or in the instructions. The defendant had the right to know from the jury itself the fault or faults attributed to it, if it were found to be at fault. (*Cole v. Railway Co.,* 92 Kan. 132, 139 Pac. 1177, and cases cited in the opinion; *Jones v. Interurban Railway Co.,* 92 Kan. 809, 813, 141 Pac. 999.) The question, "What negligence was the defendant guilty of towards said plaintiff that caused the accident?" was intended to elicit a full statement of the facts constituting the defendant's negligence. (*Railway Co. v. Roth,* 80 Kan. 752, 756, 104 Pac. 849.) The question was plain and simple, related to the ultimate and vital issue in the case, and a jury that could not understand it would scarcely be competent to render a general verdict pronouncing upon the rights of the parties. Not being willing to say that the defendant was negligent in failing to remove the growth of brush and shrubbery and widen the cut, or in failing to give signals, or in failing to keep a watchman or establish a bell at the crossing, the jury said the defendant's negligence consisted in the fact that vision was obstructed by frost on the cab windows. With the thermometer standing at from five to ten degrees below zero, frost on the cab windows was as inevitable as on the windows of our living rooms in winter time. But the plaintiff did not claim that the defendant did not keep a sufficient lookout. That issue was not raised by the pleadings or submitted to the jury by the instructions, and the result is the defendant was acquitted of all negligence charged against it.

"In saying that the negligence of the defendant consisted in failing to furnish sufficient light, the jury must be deemed to say that their verdict is not based upon any other form of negligence." (*Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 98, 140 Pac. 105.)

The special findings being consistent with themselves and inconsistent with the general verdict, they must control (Civ. Code, § 294), and because the findings

acquit the defendant of the negligence charged against it and show the plaintiff himself to have been guilty of negligence, the motion for judgment on the special findings should have been sustained.

The judgment of the district court is reversed, and the cause is remanded with directions to enter judgment for the defendant on the findings of fact.