No. 20,785.

MAUDE WILLIAMS, as Next of Kin, etc., *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. RAILROADS—*Negligence Specified in Jury's Findings—Acquits Defendant of All Other Negligence.* "Where a recovery is sought by reason of several negligent acts of the defendant, and the jury in answer to a special question finds that the negligence upon which they base their verdict is a certain single act of the defendant, the finding in effect acquits the defendant of every charge of negligence alleged in the petition or mentioned in the evidence except the one specifically designated in the finding." (*Roberts v. Railway Co.*, 93 Kan. 705, 161 Pac. 590, Syl.)

2. RAILROAD CROSSING—*Traveler Seeing Approaching Train—Failure to Sound Whistle Not Proximate Cause of Injury.* In an action to recover for the death of a person killed at a railway crossing where the negligence relied upon is the failure of the defendant to sound the whistle eighty rods from the crossing, the rule is applied as in *A. T. & S. F. Rld Co. v. Walz*, 40 Kan. 433, 19 Pac. 787, and in *Railway Co. v. Judah*, 65 Kan. 474, 70 Pac. 346, that, as deceased knew the train was approaching, she needed no notice of the fact, and the omission to sound the whistle will not create a liability against the railway company when such omission or neglect of duty was not the proximate cause of the injury.

Appeal from Gray district court; LITTLETON M. DAY, judge. Opinion filed April 7, 1917. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Harlow Hurley,* all of Topeka, and *William Osmond,* of Great Bend, for the appellant.

*T. D. Relihan,* and *A. W. Relihan,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

PORTER, J.: On December 22, 1914, Jewell Nelson, a girl of seventeen, while driving to school, was killed at a grade crossing by a passenger train of the defendant. Her mother brought this action to recover damages for the loss of her daughter's services. There was a general verdict in plaintiff's

favor for $2500 damages.  The court overruled defendant's motion for judgment on the special findings, and gave judgment on the verdict.  The defendant appeals.

The deceased lived with her mother and stepfather, Hugh Williams, on a farm in Gray county.  She attended school at Ingalls, three miles distant, driving each morning in a one-horse buggy.  The petition alleged that the horse was "a gentle family horse," not afraid of trains.  About 7:45 a. m. deceased started for school; the morning was cold and cloudy, and a heavy, low fog hung over the ground, which was covered with snow.  Defendant's track is south of the house, and to reach the crossing deceased had to travel 150 feet west, then 50 feet south to the public road, then southeast 125 feet. After leaving the house her view of the track until she arrived at the public road was more or less obscured by a number of cottonwood trees.  The petition alleged that after deceased had reached the public road, and when about twenty-five feet from the crossing, she stopped her horse and observed the approach of the train from the west; that after her horse had stopped, the engineer, without any necessity therefor, willfully, wantonly and negligently blew the whistle in short, sharp blasts in an unusual manner, at a point about 150 feet west of the crossing, negligently frightening the horse and causing it to leap forward upon the track in front of the train; and that before she could urge the horse over the track the train, running at a high and reckless speed, struck and killed her.  It alleged that the engineer failed to blow the whistle or sound any signal at the whistling post eighty rods west of the crossing as required by law, and that by reason thereof deceased was unable to hear the train until it was almost upon her.  There was a further charge of negligence in having the engine in bad repair so that leaking steam escaped in large quantities, obscuring the engineer's view of the deceased while she was approaching the track.  In addition to the actual damages sustained, punitive damages were asked on account of the willful and wanton acts of the defendant.

The opening statement of the plaintiff followed the allegations of the petition.  The stepfather of Jewell Nelson testi-

fied that he was looking from the house just before she was struck; he saw the train when it was about eighty rods west of the crossing; he knew it was the train, although it was enveloped in steam; it was moving fast; he looked and saw the girl stop near the track. Mrs. Abbott, a sister of deceased, testified that after Jewell left the house the stepfather said the train was coming and had n't whistled, and he rushed out of the house. The witness was near a window, and looking out, saw Jewell—"she was driving on a walk; she looked at the train and then she stopped; she brought the horse to a complete stop and it was standing there; they did n't whistle at the whistling post, but after they were about two hundred or two hundred and fifty feet from the crossing they began whistling sharp blasts and this frightened the horse, and he lunged forward. I saw it jump. He started right south on the road and ran right on the track. At the time they started blowing the whistle she was standing still, the horse's head was probably twenty or twenty-five feet from the crossing." On cross-examination this witness testified as follows:

"After she stopped the horse went about twenty or twenty-five feet and it just got across the track. At first Jewell seemed to kind of pull back, and then she began just kind of whipping the horse. The horse was on the jump, going just as tight as it could, and she was whipping it to make it go a little faster. . . . The horse jumped at the first blast of the whistle. . . . I should judge the engine was 250 feet away when it first blew the whistle."

These witnesses had testified before the coroner's jury and had made statements to a claim adjuster of the defendant shortly after the accident, and the defense offered in evidence the testimony taken at the inquest and testimony of the company's claim adjuster as to statements made to him by the stepfather, for the purpose of contradicting the account of the accident as given at the trial. The engine crew in charge of defendant's train testified that the crossing whistle was blown at the post eighty rods west of the crossing. The engineer testified that from his position in the cab he did not see the buggy until after the accident; that there was nothing to prevent a person from seeing the train on that morning for a distance of a mile or more from the crossing; that he gave the warning signals when the fireman spoke to him of the danger.

The jury returned the following special findings:

"1. If you find for the plaintiff then state wherein the defendant was negligent. Failed to whistle at the signal post.

"2. Was not the track of the defendant for a mile or more west of the crossing straight and on ground nearly level? Yes.

"3. Could not a person as soon as he entered upon the right of way have an unobstructed view of the track for a mile or more? No, because of fog.

"4. How far west could a person located 24 feet north of the right of way line, on the highway crossing the railroad, see the tracks, or a train on the same? Six hundred feet.

"5. Did the deceased stop on the road before going across the track? Yes.

"6. When and where did the deceased first become aware of the approach of the train? Just before she stopped about twenty or twenty-five feet north of the track.

"7. What, if anything, prevented her from seeing the train, when she was twenty or more feet north of the right of way? Obstructed by tree and also by fog.

"8. Did the deceased look and listen for an approaching train, as soon as she reached a position where she might have known of its approach? Yes.

"9. What if anything prevented her from doing so? Nothing.

"10. Did the engineer, as soon as he was aware of the approach of the deceased, blow an alarm and apply the air to his train? He blew the alarm and applied the air as soon as he became aware of danger.

"11. Did the engineer give the crossing signal as he passed the signal post? No."

1. The jury found that the deceased became aware of the approach of the train just before she stopped; that she stopped her horse at the distance of twenty or twenty-five feet north of the crossing. They found that the defendant's negligence was its failure to blow the whistle at the signal post eighty rods west of the crossing, and under repeated decisions of this court the specific finding excludes all other claims of negligence except the failure to sound the crossing whistle. (*Railway Co. v. Roth,* 80 Kan. 752, 756, 104 Pac. 849; *Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 98, 140 Pac. 105; *Adams v. Railway Co.,* 93 Kan. 475, 481, 144 Pac. 999; *Land v. Railroad Co.,* 95 Kan. 441, 445, 148 Pac. 612; *Spinden v. Railway Co.,* 95 Kan. 474, 479, 148 Pac. 747; *Pullin v. Railway Co.,* 96 Kan. 165, 173, 150 Pac. 604; *Case v. Yoakum,* 99 Kan. 253, 256, 161 Pac. 642.)

The most recent case directly in point is *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590, the syllabus of which reads:

"Where a recovery is sought by reason of several negligent acts of the defendant, and the jury in answer to a special question finds that the negligence upon which they base their verdict is a certain single act of the defendant, the finding in effect acquits the defendant of every charge of negligence alleged in the petition or mentioned in the evidence except the one specifically designated in the finding."

In *Adams v. Railway Co.*, supra, it was said: "The defendant had the right to know from the jury itself the fault or faults attributed to it, if it were found to be at fault. (*Cole v. Railway Co.*, 92 Kan. 132, 139 Pac. 1177, and cases cited in the opinion.)" (p. 481.) To the same effect see: *Broadhead v. Railway Co.*, 97 Kan. 222, 155 Pac. 20.

2. The plaintiff can recover if at all only on the ground that defendant was negligent in its failure to sound the signal at the whistling post eighty rods west of the crossing, and because that negligence could not, under the admitted facts, have been the proximate cause of the injury, the defendant was entitled to judgment on the special findings. Inasmuch as the purpose of requiring a signal in such cases is to give warning of the approach of trains, it has been held that when a traveler about to cross a railroad track knows a train is approaching the crossing, and is in a place of safety, he has all the notice of that danger which the required signal by whistle or bell would give him; and that the giving of the warning signal is as to him unnecessary. (*Railway Co. v. Judah,* 65 Kan. 474, 70 Pac. 346, and cases cited in the opinion.) See, also, *A. T. & S. F. Rld. Co. v. Walz,* 40 Kan. 433, 19 Pac. 787, where it was said:

"Of course, if the plaintiff knew that the train was coming he needed no warning of such fact, and the omission to sound the whistle will not create a liability when such omission or neglect of duty did not in any way contribute to the injury." [Citing] (*A. T. & S. F. Rld. Co. v. Morgan,* 31 Kan. 77, 1 Pac. 298.) (p. 440.)

We deem it wholly unnecessary in this case to elaborate upon the doctrine of proximate cause. The finding is that the deceased saw the approaching train when she was at a safe distance from the crossing. She was driving an old and gentle horse. Whether because of contradictions between the testimony given at the trial by some of plaintiff's witnesses and

that given at the inquest, or for some other reason, the jury appear to have discredited the claim that the deplorable accident was caused by the horse becoming frightened at the signal given at the crossing. They found that as soon as the engineer was aware of the danger he blew the alarm and applied the air brakes. The jury were unwilling to find that the engineer was negligent in this respect; and of course he was doing no more than his duty and a regard for human life required him to do.

It follows that the judgment must be reversed and the cause remanded with directions to enter judgment on the special findings in defendant's favor.