No. 31,903

R. E. TRITLE, *Appellant,* v. THE PHILLIPS PETROLEUM COMPANY and FRANK STEVENS, *Appellees.*

(37 P. 2d 996)

672

*Henry Lampl, Maurice Lampl, Rupert Teall* and *Dave Rankin,* all of Wichita, for the appellant.

*R. R. Vermilion, Earle W. Evans, Joseph G. Çarey, W. F. Lilleston, George Stallwitz,* all of Wichita, and *R. B. F. Hummer,* of Oklahoma City, Okla., for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages.

Defendants' motion to set aside answers to special questions was allowed in part, and their motion for judgment notwithstanding the verdict was allowed, and plaintiff appeals.

The place of accident was at a filling station owned by appellee Phillips Petroleum Company, at which appellee Stevens was employed. This filling station has driveways leading in from the street, and a small office building located near the pumps. To the rear is a building equipped for changing oil in automobile engines, greasing cars, etc., a part of the equipment being a hydraulic hoist used to lift cars so that the under portions might be reached more readily. On August 7, 1931, appellant drove his car into the station lot and left it near the pumps. Stevens came out and appellant said he wanted to leave his car, have the oil changed and the battery checked to see if it needed water, and that he would be back for it, and that Stevens said, "All right, we will try and have it ready for you." Appellant left, and returned about 3 p. m. Stevens came up and said he was back sooner than expected and that the car wasn't ready. Stevens then engaged for a short time in a conversation with another employee and while they were talking appellant walked around and saw his car in the building mentioned, and entered the building. The parties have widely different versions of what happened thereafter. Appellant testified that he entered the building,

but did not see the hoist; that he had never seen his car up on a hoist for the purpose of changing the oil; that he went to the left side of the car, opened the front door and turned down the cushion of the front seat to reach the battery; that in so doing he was on his knees on the running board and Stevens came in. Stevens passed while he was taking the caps off the battery and said, "It won't be long now;" that there was a wall about three or three and one-half feet from the running board on which he was kneeling, and that he had taken two of the caps from the battery and before he had all of them off the car gave a sudden jerk and he was thrown off backward; that he had a sensation of going through the air and that is the last he remembered. Appellee Stevens testified that when appellant returned for his car he asked if it was ready, and Stevens said it was not, as he understood appellant would not return until four or five o'clock; that he had been busy, but would look after it right away; that appellant asked for a drink of water and was directed to the office, a little later coming out and getting in his car to drive it on the rack; he was nervous and Stevens drove it on while appellant stood near the door. Appellant asked if he could look after the battery and Stevens told him no one was allowed on the hoist and he, Stevens, would look after the battery; that he walked to the air valve which operated the hoist and turned it on, and while looking for a wrench saw appellant with his feet on the runway of the hoist and the lift up about two and one-half feet; that he immediately stopped the lift to order appellant off, and when the lift stopped the door of the car came open and appellant fell backward to the wall and to the floor.

There was other evidence as to a previous visit of appellant to the station, the method in which the hoist was worked, appellant's knowledge or lack of it as to the hoist, whether he saw or could see it, the extent of his injuries, etc.

Plaintiff's petition alleged his version of the facts, and charged that while he was looking after the battery in his car and without his knowledge and without notice or warning to him, the appellees caused the machinery to operate the hoist and lift the car and the appellant a distance of four or five feet; that the ascent was gradual and silent so that he was unable to detect he was being lifted from the floor, that when the hoist was lifted four or five feet, for some reason unknown to him but by reason of the operation of the machinery, there was a sudden and violent jerk and he and the car

were lifted an additional foot or more, and by reason of the sudden lift and violent jerking he was thrown backward and downward against the wall and floor, causing the injuries of which he complained. He further alleged that the hoist was concealed from his view; that appellees knew he was in a place of danger and failed to warn him; that the hoist was raised without warning or notice to the appellant; that appellees knew that appellant was without knowledge, and they knew that he would be lifted without notice or warning and knew or should have known the hoist would raise gradually and then jerk.

Appellees' answer was a general denial and a plea of contributory negligence. Appellant's reply denied contributory negligence.

At the conclusion of the trial the jury returned a general verdict in favor of appellant, and answered special questions as follows:

"1. How close to the channels of the hoist did plaintiff go upon entering the building? A. 14 in.

"2. How far did the ends of the channels of the hoist extend back of the car? A. 13 in.

"3. Did the plaintiff on and prior to August 7, 1931, know that hoists were used by operators of service stations to raise automobiles for the purpose of changing oil? A. No.

"4. Was there anything to prevent the plaintiff from seeing that the car was on the hoist on the occasion in question? A. Yes.

"5. If you answer the above question in the affirmative, then state what that was. A. Plaintiff's view of hoist was mostly obstructed by car.

"6. Was the plaintiff standing on the channels of the hoist at the time the air was turned on? A. No.

"7. If you answer the above question in the affirmative, then state whether or not the defendant Stevens knew that the plaintiff was standing on the hoist at the time the air was turned on. A. ———.

"8. Was the plaintiff kneeling on the left running board of the car when the air was turned on? A. Yes.

"9. If you answer the above question in the affirmative, then state whether or not the defendant Stevens knew that the plaintiff was kneeling on the left running board of the car at the time the air was turned on. A. Yes.

"10. In the exercise of ordinary care, could the defendant Stevens have known that the plaintiff was standing on the hoist or kneeling on the running board of the car when the air was turned on? A. Yes.

"11. Do you find that on the occasion in question the hoist gave a jerk? A. Yes.

"12. If you answer the preceding question in the affirmative, would the accident have happened whether the hoist jerked or not? A. No.

"13. If you find for the plaintiff, upon what negligence do you base your verdict? A. Defendant Stevens hoisted the car while plaintiff was on the car.

"14. Did plaintiff do anything that caused or contributed to his injuries? A. No.

"15. If you answer question No. 14 in the affirmative, then state what.
A. ————."

The appellees filed their motion to set aside all but the first two answers, for judgment notwithstanding the verdict, and in the alternative on the special findings. The appellant filed his motion for judgment on the general verdict and findings. The court found that the answer to question 3 should be set aside as contrary to the evidence and not supported by any evidence, and that the answer to question 14 should be set aside as unsupported by any evidence and inconsistent with other special findings, and that the motion should be otherwise denied; that the remaining findings being inconsistent with the general verdict, the findings control, and that appellees' motion for judgment notwithstanding the general verdict and upon the remaining special findings should be allowed, and judgment was given accordingly. The court also made an order "that the decision on the motion for a new trial be held in abeyance and continued if appeal be taken herein until the appeal be decided and mandate filed."

The appellant's specifications of error raise the question discussed. Did the court err in setting aside the answers to the third and fourteenth questions submitted to the jury, and was the question of plaintiff's contributory negligence for the jury and not the court? We shall devote no time to the third question and answer, for, had the answer of the jury been "yes" instead of "no," of itself it would not have compelled a judgment notwithstanding the general verdict. Coupled with the answer to question 14, hereafter discussed, it made no difference whether or not appellant knew that hoists were used, for the jury, by its general verdict and answers to the other questions, found the appellant didn't see the hoist. As to the court's ruling on the answer to question 14, the testimony as above outlined shows there was dispute of fact as to how the accident occurred. Whether there was contributory negligence as a matter of law would be a question for the court only where the facts were undisputed or of such nature that different minds could not arrive at different conclusions, and the court could say as a matter of law that plaintiff was guilty of negligence which contributed to his injury. But where there is a dispute as to the facts from which it must be concluded whether or not the plaintiff was so guilty of negligence, the question is for the jury, and the court, even though it may believe the jury incorrectly decided the question,

may not substitute its judgment for that of the jury. (See *Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49; *Womochil v. List & Clark Construction Co.*, 135 Kan. 695, 697, 11 P. 2d 731; *Durkin v. Kansas City Public Service Co.*, 138 Kan. 558, 27 P. 2d 259; *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721, and cases cited in the above.) If the court is not satisfied with the answer returned, and a contrary answer would compel a verdict for the defendant, the court is not at liberty to substitute its conclusion for that of the jury, but should grant a new trial. (*Ward v. Grant*, 138 Kan. 363, 26 P. 2d 279.)

The court erred in setting aside the answer to question 14. However, appellees seek to support the trial court's ruling in rendering judgment in their favor on the theory that the jury failed to find the negligence relied on by appellant and thereby exonerated the appellees, citing *Railway Co. v. Roth*, 80 Kan. 752, 104 Pac. 849; *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590; *Adams v. Railway Co.*, 93 Kan. 475, 144 Pac. 999; *Williams v. Railway Co.*, 100 Kan. 336, 164 Pac. 260; *Musgrave v. Equitable Life Assurance Society*, 124 Kan. 804, 262 Pac. 571, and that under such circumstance it is immaterial that a special finding was set aside if those remaining warrant the judgment that was rendered, citing *Hurt v. Stout*, 105 Kan. 54, 181 Pac. 623. The theory is all right, the question being whether it is applicable here. The allegations of the petition have been summarized and the special questions and answers quoted above. It will be observed that the thirteenth question was:

"If you find for the plaintiff, upon what negligence do you base your verdict? A. Defendant Stevens hoisted the car while plaintiff was on the car."

In answer to other questions, the jury found that the appellant was kneeling on the running board of his car when the air was turned on, and that appellee Stevens knew it, and that the hoist jerked. Under these circumstances, another rule applies.

In *Brown v. Utilities Co.*, 110 Kan. 283, 203 Pac. 907, it was held:

"A special finding that an injury was caused by one kind of negligence does not preclude reliance on another ground which, according to other findings, the jury has found was established." (Syl. ¶ 2.)

"It is contended that the finding that the defendant was negligent in running his car at an excessive speed necessarily negatived other charges of negligence, including the failure to keep a lookout for vehicles on the crossing. That would be a fair interpretation if no other findings had been made relative to the negligence of the defendant. It has been determined that a finding that the defendant was negligent in one respect does not preclude reliance on

another ground of negligence fairly included in other findings. *(Springer v. Railroad Co.,* 95 Kan. 408, 148 Pac. 611; *DeHardt v. Railway Co.,* 100 Kan. 24, 163 Pac. 650.)" (p. 286.)

And see *Roberts v. St. Louis & S. F. Rly. Co.,* 136 Kan. 749, 18 P. 2d 167, where both rules are discussed.

Appellees say that the jury found the hoist gave a jerk and that the accident would not have happened if there had been no jerk, and that the jerk was a nonnegligent intervening cause, there being no evidence that the hoist ever jerked before or that the defendant knew or ought to have known that it ever did or ever would jerk, and that the hoisting of the car without warning did not cause the accident, and some space is devoted to an argument that the doctrine of *res ipsa loquitur* does not apply. It is not necessary that it be applied. Under Stevens' own version of the accident, it is apparent that he knew appellant was in a place of danger when the car was hoisted while appellant was kneeling on the running board of the car, for he says when he discovered him he turned off the air to stop the lift to order appellant off. There was no claim made that when he discovered appellant's peril he then called to him or warned him in any way. He shut off the air, the hoist jerked and the appellant fell. What caused the accident was the hoisting of the car under circumstances that put appellant in a place of danger, and as to which, under the findings, he was not at any time warned, and the sudden stopping of it without warning. It is true the testimony of appellee does not show how suddenly the hoist stopped, but Stevens said he stopped it immediately. It is our duty to construe the special findings consistently with the general verdict if that may be done. Webster's dictionary defines a "jerk" as a "sharply arrested pull, thrust, push . . . motion." Using that definition in connection with the testimony of Stevens as to immediately stopping the lift, it may well be concluded that the sudden ceasing of upward motion caused a "jerk." So construed, there is no room for argument as to a nonnegligent intervening cause of the accident.

Appellees insist that although appellant was invited to visit the company's place of business to avail himself of its services to the public, it did not invite him to enter the place where the accident occurred. The question need not be discussed, for under the evidence he was in no danger there, so far as this action is concerned, until appellees, with knowledge of his situation, started the chain of events which resulted in his injury.

Attention has been directed to that portion of the trial court's judgment attempting to reserve its ruling on the motion for a new trial. This was beyond its power. (See *Fuhs v. Barber*, 140 Kan. 373, 36 P. 2d 962, where a somewhat similar situation was involved.)

Appellant argues that the answers to the special questions having been set aside erroneously, the judgment of the lower court should be reversed, and the cause remanded with instructions to render judgment for the plaintiff against the defendants.

In *Luse v. Railway Co.*, 57 Kan. 361, 46 Pac. 768, a verdict was returned for plaintiff, the jury answering special questions. Defendants filed a motion for judgment on the special findings and also a motion for a new trial. Its motion for judgment was sustained and for that reason only its motion for a new trial was denied. Plaintiff appealed and it was held that judgment was rendered erroneously for defendant. In disposing of the question whether judgment should be rendered for the plaintiff or the cause remanded for a new trial, the inconsistency existing between a motion for judgment notwithstanding the general verdict and a motion for a new trial was discussed. In the opinion of the court Martin, J., said:

"The writer does not understand that his associates consider it proper practice for the court to rule upon a defendant's motion for a new trial after it has already rendered judgment in his favor upon the findings of fact notwithstanding the general verdict; but they say the journal entry shows that the general verdict did not receive the approval of the trial court, and for this reason no judgment ought to be rendered thereon; and that this principle is well established in this state." (p. 367.)

Allen, J., wrote an opinion expressing his views, and said in part:

"While the jury are the triers of the facts, the judge who presides at the trial also hears the evidence and sees the witnesses. He has the power, and it has often been declared to be his duty, to set the verdict aside if it is not in accord with the evidence. (*K. C. W. & N. W. Rld. Co. v. Ryan*, 49 Kan. 1, and cases cited.) To direct a judgment on the verdict in this case would be to require the rendition of a judgment against the defendant on a basis which the trial court has said is untruthful." (p. 369.)

In *Butler v. Milner*, 101 Kan. 264, 166 Pac. 478, in a somewhat similar circumstance, this court, being in doubt as to what the trial court intended as to approving the verdict of the jury, reversed the cause and remanded it for a new trial unless the trial court should make a finding that it approved the verdict.

In *Kansas Wheat Growers Ass'n v. Rinkel*, 126 Kan. 733, 271 Pac. 311, it was held:

"Under repeated declarations of this court, the rule is: 'If the trial judge is dissatisfied with the verdict of the jury, upon weighing the evidence presented, it is his duty to set aside the verdict and grant a new trial.'" (Syl.)

And the opinion cites many of our pertinent decisions.

In *Ward v. Grant,* 138 Kan. 363, 26 P. 2d 279, the functions and duties of the court with respect to the verdict of the jury are discussed, it being held that if the court does not approve the verdict, it should grant a new trial.

In the case at bar the trial court did not approve the verdict of the jury; it tacitly disapproved it by setting aside answers to two special questions and rendering judgment *non obstante veredicto.* The fact that it may have erred in setting aside the answers and in rendering an erroneous judgment does not, when that error has been determined, reinstate the original verdict of the jury and give it full force and effect, for it never had the trial court's approval. Under such situation a new trial should be had.

The judgment of the lower court is reversed, and the cause remanded for a new trial.