No. 25,030.

STEVE FANGMEIER, *Appellant*, v. THE MISSOURI-PACIFIC RAILROAD COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Engine Flue Borer—Injury to Eyes—Assumption of Risk—Question of Fact for Jury.* In an action for damages for personal injuries the testimony examined and held that it could not be determined therefrom as a matter of law that the plaintiff assumed the risks of his employment.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed February 9, 1924. Reversed.

*Charles D. Ise*, and *A. A. Baker*, both of Coffeyville, for the appellant.

*W. P. Waggener, J. M. Challis, B. P. Waggener*, all of Atchison, and *S. H. Piper*, of Independence, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover for injuries suffered by plaintiff while in defendant's employ. The plaintiff appeals from an order of the court sustaining a demurrer to his evidence.

Plaintiff had worked for the defendant about two years, first at building fires in the roundhouse, later as a flue borer's helper, and the last two weeks before the injury, as a flue borer. While boring flues on the night of April 13, 1922, he suffered an injury causing him to lose the sight of his right eye.

It was the contention of the defendant that the plaintiff was an experienced flue borer's helper, and being a flue borer himself he was thoroughly aware of the risks and hazards of the employment, and that when he sought and retained employment with the defendant he assumed all the risks incident thereto; that the injury arose entirely out of the common and ordinary hazards and risks of his employment.

The plaintiff contends that, under the evidence which he adduced, it was a question of fact for the jury as to whether or not he had assumed the risk; that there was no evidence to show that he could have performed the work he was directed to do in a safer manner than the way in which he proceeded.

An employee entering into a contract of hiring assumes all the risks and hazards usually incident to such employment. He will be presumed to have contracted with reference to such risks and hazards. While the plaintiff assumed all the ordinary risks incident to the service, he did not assume a risk which might be created by the negligence of the defendant; he assumed only such risks as he knew to exist or may have known by ordinary care.

The testimony, among other things, showed that, as a flue borer's helper, the plaintiff's duty had been to clean the fire out of fire boxes in locomotives; that defendant was operating with a reduced force; that plaintiff as a flue borer had no helper; that the locomotive on which he was working when he was injured was one used to pull the "Rainbow Special" which runs from Kansas City, Mo., through Coffeyville; that the engine came in from its run about 9:30 p. m.; that at 11:15 p. m. it was brought into the roundhouse where the foreman directed plaintiff to "work it right away." It was desired to use the same engine the following morning; that when plaintiff was directed to "work it" the engine was hot; that it carried 140 pounds of steam; that plaintiff had never attempted and had never seen anyone else attempt to clean an engine when it was as hot as this one; that it was so hot that the workman was unable to get on top of the arch to properly insert the blower for blowing out the

flues; that this was the first time plaintiff had ever been directed to, or attempted to work in the manner required to blow out the flues; that on former occasions, while he was a flue blower's helper, when he had been directed to clean the fire from fire boxes, he had protested against going into hot engines; that on such occasions when he protested he was not exposed to the dangers from which he received the injury complained of; that, in order to perform the work demanded by the foreman on this occasion, it was necessary for him to go into the fire box of an engine that was so hot that his clothing —a heavy canvas apron—coming in contact with the sides of the fire box was set on fire; that when the work is performed in the ordinary way the blower can be inserted up against the base of the flue so that the dust or ashes do not fly back into the workman's face, or if they do fly back, they are not so hot and would not cause the injury sustained here by the plaintiff; that in his attempt to clean the flues under the conditions which confronted him a stream of fire blew back and struck him in the face, burning his right eye so that he lost the sight of it; that the defendant furnished him no goggles nor warned him that goggles were necessary or essential in the blowing of flues in a hot engine; that on account of the excessive heat he was unable to get close enough to see whether or not the shield was properly up against the flue; that when he thought it was he turned on the compressed air; that when he did so hot particles of cinders and dust and scale flew back out of the flue, striking him in the right eye destroying his sight.

A witness testified "I worked for the Missouri Pacific ever since 1918, mostly boring flues. I bored them when they were hot, and I bored them when they were cold. I never bored flues when there was 140 pounds of steam. Have bored them though when they were hot . . . When they were hot and they were in a hurry for them I just botched over the job and some of them that were stopped up I seen I couldn't open them, I just let it go ahead. I couldn't put my eye out with it. I have bored them with something like 75 or 100 pounds of steam on them, but I couldn't do no job on them . . . I have cleaned as high as sixteen engines in one day. . . . With 140 and 150 pounds of steam the engines comes in, the arch is red hot. There is lots of difference between an engine carrying 100 pounds of steam and an engine carrying 140 pounds of steam. Some engines takes a long time to cool and some will cool down right quick. Some engines you can cool them off in thirty minutes, and

some you can leave it there about three hours and be hotter than them that had been in there but thirty minutes."

In *Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 140 Pac. 105, it was said:

"In order that a recovery shall be defeated upon that ground the plaintiff must not only have known of the existing conditions—he must also have realized and appreciated the danger that resulted from them. (26 Cyc. 1199.) This is not necessarily established by the fact that he made complaint; in doing so he may have had in mind merely the inconvenience that resulted from the want of additional lights. The matter of making the place safe to work in was not his problem. He was not required to take notice of any but the most obvious dangers. But much more than this was required of the employing company. It was under an obligation to consider carefully whether existing conditions involved any unnecessary danger—to use all reasonable care to see that the place was made safe, not only with respect to apparent risks, but also with respect to any that were latent. . . . It cannot be said as a matter of law either that the danger resulting from insufficient light was so obvious that the plaintiff must have known of it, or that it was so remote that the defendant could not be charged with knowledge of it. Both questions were for the jury." (p. 100.)

The testimony in the instant case shows that the occasion on which the plaintiff was injured was the first time that he had ever worked on or had ever seen anyone work on an engine as hot as the one in question, so hot that he could not get on top of the arch and properly insert the blower into the flue. It was the first time he had ever been directed to or attempted to do the work in this manner. He had protested on former occasions when he was asked to go into a hot engine and clean out the fire box. On those occasions, however, he was not exposed to the dangers from which he received the injury here complained of. It is reasonable to conclude, under the testimony, that when the plaintiff protested, he had in mind the suffering from the extreme heat or the danger of being overcome by heat and falling on the floor of the fire box or of touching some part of the fire box with some part of his body and being severely burned. Those dangers were unquestionably more apparent than the danger of losing his eye from the dust blown out of the flues. There was no testimony showing that he knew the cinders flying out of the flues would be red hot or that he comprehended this danger.

An emergency existed. The force was greatly reduced. This work was not in the regular line of plaintiff's duty. On account of the emergency it was necessary for this engine to go out in the morning. Plaintiff was directed to "work it right away" and was not given the

opportunity to reflect and comprehend the danger of this special work.

The defendant alleged in its answer "that the plaintiff had been directed, in performing the character of work in which he was then engaged, to wear goggles which had been furnished him by the company and he had been notified that no such work was to be done without the use of goggles to protect his eyes and that notwithstanding such notice he was performing such work without goggles, etc." An allegation which indicates that the defendant realized the dangers of the work in which the plaintiff was engaged. On the other hand, however, the testimony showed that the defendant had given plaintiff no direction with regard to the use of goggles and had not furnished him any goggles.

The plaintiff had a right within reasonable limits to rely on the knowledge, skill and ability of the defendant's foreman who directed him to do the work, that it was safe, under all the existing conditions. Without further discussing the evidence or the principles underlying the question of assumed risk, we feel that the case should have been submitted to the jury.

The judgment is reversed and the cause remanded for further proceedings.