GROSS *v.* PENNSYLVANIA, P. & B. R. Co.

*(Supreme Court, General Term, Second Department.* December 24, 1891.)

1. RAILROAD COMPANIES—NEGLIGENCE IN OPERATION OF ROAD.

A railway company by which plaintiff was employed as engineer, and defendant, another such company, used a single track in common between two stations, under rules providing that no train should be started from either unless the train staff for that track was in possession of the engineer. While plaintiff's train, with the staff, was at the easterly station on a foggy night, one of defendant's engineers received permission from the main office, through the operator at the westerly station, to flag up such track, by running preceded by a flagman with a light; and was told by the operator, after the latter had apparently telegraphed for information, that plaintiff's train was not expected down before 6 or 7 o'clock next morning. On the way up the flagman's lamp became extinguished, but the engine proceeded until plaintiff's train came in sight. A collision appearing to be imminent, plaintiff jumped from his engine, and sustained serious injuries. *Held,* that the presence of defendant's engine was such negligence as would entitle plaintiff to recover for the injuries sustained.

2. MASTER AND SERVANT—LIABILITY TO THIRD PERSONS—OPERATION OF RAILWAY.

Permission was given to a locomotive engineer, by a station agent, after communicating with the main office, to flag up to a station for water, in violation of a rule prohibiting him from proceeding without possession of the train staff. *Held* that, it being necessary for him to procure a water supply, his proceeding without the train staff was not beyond the scope of his employment, so as to relieve the employer from liability for injuries sustained by the engineer of another train, by reason of the wrongful presence of the engine upon the track.

3. RAILROAD COMPANIES—OPERATION OF ROAD—CONTRIBUTORY NEGLIGENCE.

An engineer, having a right to assume that the track was clear, failed to carry a head-light upon a foggy night, as required by the rules, but, running with the tender foremost, carried a small red light thereon, as was his custom, under such circumstances. A collision with an engine wrongfully upon the track appearing imminent, he jumped from his engine, and sustained serious injuries. *Held,* in an action to recover for such injuries, that the failure to carry a head-light was not conclusive evidence of contributory negligence on his part, and that the connection of such neglect with the accident was not a question of law for the court, but one of fact for the jury.

4. SAME.

An engineer, suddenly placed in a position of apparent imminent danger from collision of his engine with another, wrongfully upon the track, jumped from his cab, and sustained serious injuries. *Held* that, although no collision occurred, his act was not the result of such unreasonable alarm as would preclude a recovery for the injuries received.

5. MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANTS.

An engineer in the employ of a railway company, which uses a track in common with another company, is not, while running an engine on such track, a fellow-servant with the employes of the latter, so as to prevent a recovery by him for injuries received through their negligence.

Appeal from circuit court, Orange county.

Action by Charles H. Gross against the Pennsylvania, Poughkeepsie & Boston Railroad Company for injuries sustained by the negligence of defendant. Judgment for plaintiff, and order denying motion for a new trial. Defendant appeals. Affirmed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Greene & Bedell,* for appellant.　*William D. Dickey,* for respondent.

DYKMAN, J. This is an action for the recovery of damages for injuries caused by the negligence of the defendant. The plaintiff was in the service of the Central New England & Western Railroad Company, as an engineer of a freight train running between Maybrook Junction and Campbell Hall, a single-track railroad, operated under staff rules, which were that no train would be run over the road between Maybrook and Campbell Hall without the train staff marked "Maybrook and Campbell Hall," or a substitute train staff ticket. Enginemen of west-bound trains could not leave Maybrook station without the train staff, or a substitute train staff ticket, to be furnished to them by the operator at Maybrook. Enginemen of east-bound trains were

not to leave Campbell Hall without the train staff, or a substitute train staff ticket, to be furnished to them by the operator at Campbell Hall. Engine-men were not to accept a train staff ticket as a substitute for a train staff for their authority to proceed with their trains unless the operator at the same time showed them the train staff. Early in the morning of November 7th the train of the plaintiff, consisting of about 20 freight-cars, was made up at Maybrook for Campbell Hall, with the tender in front of the engine which was attached to the train to draw it. The plaintiff drew up the train in front of the Maybrook station, left his engine, and started back for the train staff, when it was handed to him by the conductor, who procured it from the op-erator. The railroad of the defendant runs from Slatington, in Pennsylvania, to Campbell Hall, in New York, and on the same morning of November 7th an engine of that company was at Campbell Hall out of water, and the en-gineer applied to the telegraph operator there for permission to proceed with his engine to Maybrook Junction for water. The operator, who represented three roads, the defendant's, the Central New England & Western, and the New York, Ontario & Western, telegraphed to Hartford, to the office of the Central New England & Western, for permission for the engineer of the de-fendant to go for water as he desired, and received permission for the engineer to flag up to Maybrook, which in the night-time means to have a man with a light in advance of the engine. Upon receiving such information, the en-gineer inquired of the operator whether the switch-engine was likely to come down from Maybrook to Campbell Hall. After turning to his instrument, and doing some telegraphing, the operator informed the engineer that the switch-engine, which was the one operated by the plaintiff, would not be down until 6 or 7 o'clock in the morning. Thereupon the engineer started towards Maybrook, but when he had proceeded a considerable distance the red light carried by the flagman in front of the engine became extinguished, and the flagman stepped upon the engine when it came up to him to relight his lamp, the approaching engine of the plaintiff gave the signal for brakes, and the engineer of the defendant reversed his engine. After the plaintiff re-ceived his train staff he started his train for Campbell Hall without notice or knowledge of the transactions at that place, or of the approach of the defend-ant's engine. After proceeding about a mile, the engine of the defendant was discovered, and the plaintiff reversed his engine, and jumped. The two engines did not collide, because both were reversed. The plaintiff sustained serious injuries, from which he was suffering at the time of the trial. The jury gave him a verdict for $10,000, and the defendant has appealed from the judgment entered thereon, and from the order denying a motion for a new trial on the minutes of the court.

At the close of the testimony upon the trial the defendant moved for a non-suit, on the ground of contributory negligence of the plaintiff, and the speci-fication was that at the time of the accident he was running without either a head-light or a white light in front of his train. The motion was based on the rules of the plaintiff's railroad company requiring each train running after sunset, or in an obscure day, to display the head-light in front, and two or more red lights in the rear, and, when a train is being pushed, to display a white light in front of the leading car at night, and when the train is obscured by fog. The plaintiff was running his engine backwards, with its head to-wards the train, and its tender ahead, with a red light fastened on the tail casting behind the tank, sometimes called the "bumper;" and, as that was not a compliance with the rule of the company, it is claimed by the appellant to have been negligence as a matter of law, which entitled the defendant to a dismissal of the plaintiff's complaint. As the doctrine is finally settled in this state, the failure to perform a duty imposed by statute or by rule may be shown in an action like this, but it is not conclusive evidence of negligence.

*Knupfle* v. *Ice Co.*, 84 N. Y. 488. If, therefore, it is to be assumed that the failure to place a head-light upon the tender of the plaintiff's engine had any connection with the accident, yet it raised a question of fact for the consideration of the jury, and not a question of law for the determination of the court. If any permissible deduction from the facts will make a cause of action, or if there be either inference or fact in doubt, a nonsuit will be erroneous, and the jury must draw the inference and find the fact. With the train staff in his possession the plaintiff had the right of way to Campbell Hall, and the right to assume that the track would be free, as it would be so if the rules of the company were observed, and he could not anticipate their violation. No engineman could leave the station at either end of this road, unless he had the train staff in his possession or saw it in the possession of the operator, for the operator could not issue substitute tickets without the possession of the staff. Without notice of the permission granted to the engineer at Campbell Hall to run to Maybrook without the staff, the plaintiff started his train with no reason to anticipate danger. We find no rule forbidding the operation of an engine backwards, and the only charge against the plaintiff is his failure to display a head-light or white light on the end of the tender which was the front of the train. That fact was proper for the consideration of the jury, but as evidence of negligence which contributed to the injury it was very slight, because the object of the rule requiring a light was to prevent collision, and here there was none. It was not sufficient to prove an act of negligence against the plaintiff, unless it appeared that his injuries were sustained by reason thereof. *Chrystal* v. *Railroad Co.*, 124 N. Y. 519, 26 N. E. Rep. 1103. The injuries to the plaintiff resulted from the approach of the engine from an opposite direction on the same track. The trial judge afforded the defendant the full benefit of the testimony, by charging that if they found that the plaintiff was proceeding with his engine in violation of the rules of his company, or if in proceeding in disregard of such rules he contributed to the injury, he could not recover. The charge imposed a severe burden upon the plaintiff, and was all the defendant could require.

But the plaintiff was required to justify another portion of his conduct. When the approaching engine was discovered he jumped from his engine, and received the injuries of which he complains, and it became necessary for him to satisfy the jury that he was placed in a position of danger so apparent, imminent, and serious as to compel him to make a sudden choice, in the presence of an apparently great and impending peril, between the hazard of a dangerous leap from his engine and a collision between the two engines, and that his conduct was dictated by ordinary prudence, and was not the result of unreasonable alarm. The charge of the judge upon this question left the jury to determine whether the danger was of a character to justify the plaintiff in taking the course he did, and whether his course was such as a person of ordinary prudence, placed in the same jeopardy, might have pursued. Neither party requested more specific instruction upon the point, and, so far as it went, it was correct. A proper addition would have been that the fact that the two engines did not collide was insufficient to convict the plaintiff of imprudence in making the jump from his engine. He was compelled to act upon the probabilities as they appeared at the time and to make a sudden choice. The engines were only about 200 feet apart when the plaintiff jumped, and he was the last to leave, the conductor and fireman having left before him. When the engines stopped, they were within 4 or 5 feet of each other. We think the facts and surrounding circumstances fully justified the jury in finding the plaintiff free from fault.

Upon the question of the defendant's negligence, the jury was restricted to the conduct of the engineer of the defendant after he received permission to flag his engine from Campbell Hall to Maybrook, and the case endured the

restriction.　The evidence was sufficient to sustain the finding of negligence in the management of the engine after it left Campbell Hall, and the appellant introduces no objection to the charge on that subject.

Another question remains for examination.　The defendant desired the judge to charge that the request of the defendant's engineer to run his engine from Campbell Hall to Maybrook for water over the road of the plaintiff's employer is not the request of the defendant, and, unless the jury can find from the evidence that the defendant's engine was put upon the tracks of the Central New England & Western Railroad at the request, or with the knowledge and consent, of the defendant, you cannot find in favor of the plaintiff. In response to this request, the judge left it to the jury to determine whether, under the circumstances, it was within the scope of the authority of the engineer to make application to run his engine to Maybrook for water, and the defendant excepted.　We think it was entirely competent for the trial judge to charge the jury that the engineer had the power to make the application. The facts were undisputed.　The engineer was placed in charge of the engine, and its entire control was vested in him, and it was to be operated by him. Its operation was the end required, and all the means essential to the successful accomplishment of that end were authorized.　Water is necessary for the creation of steam, and provision is made for carrying the same in a tank accompanying the engine, and, when it becomes diminished or exhausted, it must be replenished, or the engine must stop.　Therefore, under the circumstances in which the defendant's engineer was placed, it became necessary for him to obtain water for his engine, and within the principle stated he possessed the power to adopt the most available means for its acquisition.　There is no claim that he could have obtained water at Campbell Hall, or at any place nearer or easier than Maybrook.　Whether, therefore, the question be one of law or of fact, it was properly solved by the jury, and there is no error upon that subject requiring a reversal of the judgment.　The exceptions to the charge respecting the negligence of fellow-servants presents no error, and we find none in the record.　The judgment and order denying the motion for a new trial should be affirmed, with costs.　All concur.