No. 24,454.

W. A. GENTRY, *Appellee,* v. JAMES C. DAVIS, as Agent of the United States Government, etc., *Appellant.*

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Fireman Injured in Jumping from Engine—Frightened at Standing Headlight—No Apparent Danger—No Negligence—No Liability.* Where plaintiff was employed as a fireman on defendant's railroad, and while in the performance of duty on his engine, in approaching a station at twenty miles per hour in the darkness, where another locomotive was standing, the headlight of which was burning brightly in accordance with the rules and orders of the defendant company, with which plaintiff was familiar, the plaintiff, at an exclamation from the engineer to "jump," when two and a quarter miles from the other engine, jumped out of the gangway of his engine into the darkness and was injured, *held,* there was no negligence on the part of the defendant and no liability.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion on rehearing filed February 9, 1924. (For original opinion of reversal, see 114 Kan. 327.) Former decision adhered to.

Gentry v. Davis, *Agent*.

*W. W. Brown, A. G. Armstrong,* and *E. L. Burton,* all of Parsons, for the appellant.

*F. E. Dresia, Charles Stephens,* both of Columbus, *Paul MacCaskill,* of Parsons, *Frank Doster,* and *J. E. Addington,* both of Topeka, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The plaintiff recovered damages for personal injuries and defendant appealed. The judgment was reversed. (See *Gentry v. Davis,* 114 Kan. 327.) A rehearing was granted and the case resubmitted.

In the former opinion it was said:

"On November 8, 1918, plaintiff was a fireman on one of defendant's locomotives approaching the Condon station, Labette county, Kansas, from the south. At the station, headed southward, was another locomotive. It was night and the headlight of the locomotive standing at the station shone along the rails southward. When the engine, on which plaintiff was fireman, was distant two and a quarter miles from the station, the light of the other engine, or the exclamation of his engineer, frightened the plaintiff so that he jumped out of the gangway of his engine into the darkness and was injured. . . . The plaintiff recovered upon the theory that the engineer, on seeing the light ahead, negligently became excited, believing that a collision was imminent, and negligently warned plaintiff to jump; that the engineer was negligent in failing to be more cool and collected and failing to give the warning in a proper tone. The findings of the jury were to the effect that the engineer gave his exclamation with the intention of promoting the safety of the persons on his engine; that he did so in good faith when suddenly confronted with a situation producing apprehension of danger, but that the engineer was negligent in not making proper observation. . . . The evidence disclosed that south-bound train, Extra 732, was, by its orders, and by the rules of the company, required to take its place on the main line track at Condon station and required to keep its headlight burning; that it was in every way complying with the orders and rules of the defendant company. The plaintiff knew these orders; was familiar with the rules governing the situation. He knew that the proper place for engine Extra 732 south bound, was on the main line at Condon station and that his train, Extra 730, was required, by the orders, to take the siding, and knew that the light of engine Extra 732 would be burning as he approached the station and would shine along the track . . . It is clear that a recovery was had in this action based upon the warning given by the engineer. It is clear also that the engineer, believing a collision was imminent, acted in good faith in giving the warning. The question, therefore, does not involve the extent of danger, nor the actual appearance of danger, but is based squarely upon the action of the engineer, who in good faith, but excitedly, gave an erroneous warning which was acted upon by the plaintiff without any consideration." (pp. 327, 329, 330.)

The plaintiff was an experienced fireman. At the time of the accident his engine was moving around a curve to the left, at a speed

of 20 miles per hour. The rules of operation, with which he was familiar, required him, as well as the engineer, "to watch signals and switches carefully, as frequently the first view can be had from the fireman's side." He was required to assist the engineer in keeping a lookout on the track for signals and obstructions. He was required to be familiar with the rules that apply to the protection of trains and be prepared to promptly use the signals.

Negligence is the basis of liability. The plaintiff can recover only through the negligence on the part of the defendant or some of its employes. In the absence of negligence on their part, there can be no recovery. Negligence consists of the violation of a duty—a duty which arises, either by virtue of a statute, or by contract. We have no statutory provision defining the duties of an engineer and fireman towards each other. The statute makes a railway company liable in damages to its employes in consequence of any neglect of its agents or by any mismanagement of its engineers or other employees. (R. S. 66-235.) From this statute the plaintiff argues that the fireman's duty makes him an assistant to the engineer; that the nature of the engineer's duty implies the exercise of authority over every one associated with him in the mechanical operation of the engine and train, and guarding against dangers incident to such mechanical operation. From this he contends that he was under the direction and authority of the engineer and that when the engineer exclaimed "jump" he obeyed the command and was injured; that the act of the engineer was the act of the defendant and that therefore the defendant is liable for his injury. A false premise ordinarily produces an incorrect result. The argument omits an essential premise of the syllogism, that, under the rules, with which he was familiar, plaintiff also was required to keep a lookout. He owed to himself, and to all persons, the duty to make observations ahead as they approached the station. His point of vision, if he looked, enabled him to see as well or better than the engineer. If he did not look he is chargeable with all he might have seen had he looked. His action and conduct are measured by what he saw, or could have seen had he exercised the duties of observation imposed upon him. (*Mo. Pac. Rl'y Co. v. Gedney,* 44 Kan. 329, 24 Pac. 464; *St. Louis &c. R. Co. v. Russell,* 62 Ark. 182; *D. & R. G. R'y Co. v. Henderson,* 10 Col. 1, 4; *Harris et al. v. Missouri K. & T. Ry. Co.,* 24 Okla. 341.)

22—115 Kan.

The plaintiff contends that the engineer was his superior and that he jumped because the engineer commanded him to do so. The act of which plaintiff complains was not within the scope of the engineer's authority. The engineer had authority to direct the fireman in the management of the engine—but only in so far as the performance of such directions did not endanger the fireman's safety. The engineer had no authority to direct the fireman to jump off the engine when moving at a speed of twenty miles per hour. It was obviously dangerous to jump from the engine when moving at such a high rate of speed. Under the circumstances the plaintiff himself was the author of his misfortune. The chance of injury was so great that the plaintiff must be held to have jumped at his own risk. His injury was due to his own negligence. (*Stephens v. Southern Railway*, 82 S. C. 542; *Vanordstrand v. Northern Pac. R. Co.*, 86 Wash. 665.)

The plaintiff cites *Martin v. Railway Co.*, 93 Kan. 681, 145 Pac. 849. The reasoning of that case does not support his view. The plaintiff's claim of the violation of a duty does not aid him when the facts themselves show no breach of duty within the scope of the engineer's authority. The defendant was responsible only so long as the engineer could be said to be performing an act within the course of his employment. When he got beyond the course of his employment to negligently do a wrong in ordering the plaintiff to abandon his engine, the defendant was not liable for his act. (See, also, *Adams v. Hines*, 114 Wash. 672; *El Paso & Southwestern Co. v. La Londe*, 108 Tex. 67.)

In *Grand Rapids and Indiana Rld. Co. v. Ellison*, 117 Ind. 234, it was said:

"It is a fact well known that all engines hauling passenger and freight trains carry a fireman as well as an engineer, and when the engine is in motion the post of the fireman is on the left side of the cab and that of the engineer on the right. If there was a fireman on the appellant's engine on the morning of the accident, it was his duty when his train was in motion, and especially so when nearing a railroad crossing, to be at his post and on the lookout." (p. 239.)

In *Stewart v. Nashville C. St. L. Ry.*, 183 Ala. 339, it was said:

"It may be conceded that plaintiff's leap to escape from the flaming face of a mogul engine thus unexpectedly seen in the night might be no more nor less than what a reasonable man might have done, had he supposed it to be standing on the main line. Nevertheless, we think his case must fail, because the defendant was not guilty of any breach of duty to him, and because he

Gentry v. Davis, *Agent*.

must be held to have assumed the responsibility of determining for himself what he would do for his own safety, when he misjudged ordinary and usual conditions which were not at all dangerous in fact. Reduced to its last analysis, the complaint would impose upon defendant the duty of informing plaintiff, not of danger, but of the *absence of danger*—a rule of conduct not prescribed by any authority known to us, and which we think cannot be supported by either reason or the requirements of sound policy." (p. 345.)

In the instant case there was no danger. There was no duty on the part of the engineer to warn the fireman either of danger or of the absence of danger. Plaintiff's failure to look; his failure to do his duty in that regard, cannot protect him against the consequences of his negligence. He cannot shift to someone else the burden that rested upon himself. The rules under which he worked provided him with no excuse for not keeping a lookout. Had a stranger been injured because of the failure of either the engineer or fireman to keep a lookout, the defendant company would not be relieved of negligence because the engineer or the fireman asserted that he was engaged in some other duty. (*Mo. Pac. Rl'y v. Gedney,* supra.)

The case of *Gt. Northern Ry. v. Wiles,* 240 U. S. 444, was one to recover for the death of a brakeman on a freight train. A drawbar failed, the train breaking in two. The night was dark and misty; the place on a sharp curve. A passenger train was following the freight. It was the brakeman's duty to go back and flag the passenger train. He failed in this duty. A collision resulted in which he was killed. The court rejected the claim that the defective coupling was the proximate cause. It held that the negligence of the deceased brakeman, in failing to comply with the rules of the company, was the causal negligence. The court said:

"The pulling out of the drawbar produced a condition which demanded instant performance of duty by Wiles, a duty not only to himself, but others. The rules of the company were devised for such conditions and provided for its emergency. Wiles knew them and he was prompted to the performance of the duty they enjoined (the circumstances would seem to have needed no prompting), by signals from the engineer when the train was stopped. He disregarded both. He brought death to himself and to the conductor of the train." (See, also, *U. P. Rl'y Co. v. Fray,* 31 Kan. 739, 3 Pac. 550; *Mounce v. Lumber Co.,* 91 S. W. 240 (Tex.); *Novock v. M. C. R. R. Co.,* 63 Mich. 121; *Smith v. Railway Co.,* 80 S. C. 1, 4.)

We adhere to the original decision that there was no negligence on the part of the defendant and no liability.

Mason, J. (dissenting): I think a liability of the railroad company might be based upon the principle applied in *Railway Co. v. James*, 81 Kan. 27, 105 Pac. 41, although the facts are quite different from those here presented, the injured person having been a passenger.

Harvey, J. (dissenting): The plaintiff was a locomotive fireman in the employ of the defendant railway company and the trip on which he was injured was from Muskogee, Okla., to Parsons, Kan. The train was therefore engaged in interstate commerce and the plaintiff's right of action, if any, is based upon the Federal Employers' Liability Act (35 U. S. Stat. 65; 36 U. S. Stat. 291; *Goodyear, Adm'x, v. Railway Co.*, 114 Kan. 574.)

The statute provides:

"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . ." (§ 1.)

It will be noted that the statute makes no distinction between the relative positions held by the injured employee and the employee whose negligence caused the injury. Hence, so far as determining the liability of the defendant in this case is concerned, it is not material whether the engineer was the superior of the plaintiff or whether they were fellow servants. An inquiry into that is important only on the question of the negligence of the plaintiff.

The question that presents itself in this case is whether the injury alleged to have been sustained by plaintiff was the result of negligence of the engineer. Naturally, this is a question of fact, to be determined from the evidence. In this case it is settled by the findings of the jury. Among the special questions answered by the jury are the following:

"If you find for the plaintiff state on what grounds of negligence you base your verdict? Answer: Negligence of Engineer Peterson making [im]proper observation of distance of engine No. 732."

"Did Engineer Peterson, in good faith, act as a person of ordinary care when suddenly confronted with the light of engine 732? Answer: No."

"Was engineer Peterson guilty of negligence in failing to make proper observation before he uttered a warning? Answer: Yes."

It will be noted that the statute (as applied to this case) makes the carrier liable only in cases where such injury results "in whole or in part" from the negligence of its employees. Interpreting this

Gentry v. Davis, *Agent.*

statute, it has been held that when an employee has sustained injuries solely by his own negligence the carrier is not liable. (*Gt. Northern Ry. v. Wiles,* 240 U. S. 444; *Frese v. Chicago, B. & Q. R. Co.,* 44 Sup. Ct. Rep. 1.) This, also, is a question of fact to be determined from the evidence. Upon this point the jury returned answers to special questions as follows:

"Did Gentry in jumping into the darkness act as an ordinary thoughtful, careful and self-possessed man would have acted? Answer: Yes, the situation considering.

"Did the plaintiff before jumping look in order to determine whether there was immediate danger of a collision? Answer: No. He jumped at the engineer's warning."

The evidence upon which the above findings are based, in substance, is: They had stopped for water at Labette, a few miles from Condon station. After leaving Labette it is upgrade, as far as the curve where the track turned to the left at a point about two to two and one-half miles from Condon. The plaintiff was firing the engine. While doing this he stood upon a deck, between the engine to his left and tender to his right. Directly back of him was the gangway. On the left side of the engine was the fireman's cab, with a seat and a window to the left and in front, but he could not see out of these windows from the position he necessarily occupied while firing the engine. The fire door of the engine opened with an air arrangement operated by foot pedals on the deck. In firing the fireman reaches to his right for a shovel of coal. As he brings it forward he steps on the pedal with his left foot. This opens the door to the fire box of the engine and he throws the coal in. He releases the pedal and the door closes as he reaches for another shovel of coal. The fire is bright and blinds, or blurs, the fireman's sight for a moment after looking into the fire box. Six to eight shovels of coal are put in at one firing. The fireman then sits on his seat for a few minutes, and fires again. The engineer's cab is on the right side of the engine. They had about reached the top of the grade, were on the turn to the left and coming in sight of Condon station, where an engine stood with its headlight toward them. Plaintiff was busy firing the engine; the engineer left his cab, passed between the fireman and the engine to the fireman's cab, jumped down behind the plaintiff and holloed, "Where are we at?" and yelled "Jump." His manner and tone indicated excitement. Just at that time the plaintiff was standing with his back to the gangway, his shovel in his hand, firing. He dropped his

shovel, turned, and jumped. The train was going twenty miles per hour. He was injured, and for the injuries thus sustained he seeks damages in this action. He alleged, among other things, that the engineer was negligent in holloing "Where are we at?" and yelling "Jump," without making proper observations. Though the details are told differently in some respects by the engineer and the head brakeman, who was riding on the engine at the time, this was the plaintiff's version, which, if believed by the jury, sustained their findings. It is clear from the evidence that the engineer, when his engine reached the top of the grade and was on the curve, saw on the rails the glare of the headlight on the engine facing him. He did not understand what it was. Perhaps he forgot for the minute the orders he had received to pass the south-bound train at Condon; at any rate he became excited, thought there was about to be a head-on collision; holloed "Where are we at?" and yelled "Jump." As soon as the fireman jumped the engineer shut off his engine and stopped and he and the brakeman got off. He then figured out that the engine facing them was standing at Condon waiting for them to pass, as his orders had informed him.

The fact that there was no real danger and that the fireman would not have been injured if he had not jumped is not material. He is to be judged by the circumstances as they appeared to him at the time, not as they really were. (*Pierson Lumber Co. v. Hart,* 144 Ala. 239; *St. Louis, I. M. & S. R. Co. v. Touhey,* 67 Ark. 209; *L. & N. R. Co. v. Rains,* 15 Ky. Law Rep. 423; *Gross v. Pennsylvania P. & B. R. Co.,* 16 N. Y. Supp. 616; *Cowen et al. v. Ray,* 108 Fed. 320.)

Appellant makes much out of a rule of the company with which plaintiff was familiar, which required the fireman, as well as the engineer, to keep a lookout ahead, especially in rounding curves to the left and approaching stations. While the record cites no rule to that effect, perhaps it may be said to be conceded that one of the duties of the fireman—perhaps his chief duty—was to fire the engine. At any rate, there is testimony to that effect, and we do not find that disputed. The undisputed evidence, also, is that it was a physical impossibility for the fireman to be looking ahead while in the act of firing the engine. No complaint is made that the fireman was neglectful of his duty in firing the engine at the time in question, hence, it is not proper to bar his right to recover, because of his supposed neglect of the then inconsistent duty of looking

ahead. Realizing that the fireman could not be expected to look ahead while in the act of firing the engine no doubt prompted the engineer to cross to the fireman's cab to get a better view while on the curve to the left.

There is no room in this case to relieve the defendant from liability because of contributory negligence of the plaintiff. The federal employers' liability act specifically provides that contributory negligence is not a defense, though it may be shown in mitigation of damages; and appellant makes no claim of contributory negligence in this case.

There is quite a little discussion in the briefs of the relative positions of the engineer and the fireman. As we have heretofore seen, this does not go to the question of the liability of the defendant any further than it may have a bearing on the negligence of the plaintiff. The rules of the defendant, offered in evidence, make the engineer the superior in authority. Rule 502 reads:

"Firemen, when on the road, are under the supervision and direction of the engineer, and must obey the orders of the engineer respecting the proper use of fuel and the performance of their duties."

And rule 525 provides:

"Firmen must . . . ; assist the engineer in keeping a lookout on track for signals and obstructions, . . . and in every way fit themselves to be able assistants to the engineer."

The rules respecting the duties of the engineer are not abstracted. Generally this superiority of authority of the engineer has been recognized by this court in *Railway Co. v. Fowler,* 61 Kan. 320, 59 Pac. 648, and in our statute (R. S. 66-235), and by the United States supreme court in a case involving the federal employers' liability act (*Frese v. Chicago, B. & Q. R. Co.,* 44 Sup. Ct. Rep. 1.) It is not ncessary that this superiority of authority should go to the extent that the fireman would be required to obey a command to jump. If, from the relation, the fireman, in the exercise of ordinary prudence, could properly assume that the engineer had made a proper lookout at a time when the fireman's duty made it impossible for him to be on the lookout and could rely with reasonable assurance that the engineer would not give the excited warning of imminent catastrophe without just cause, it would be sufficient for the fireman to act upon it without being negligent himself. At least, it is a matter the jury might properly consider in determining whether the fireman was negligent. Especially is this true in view

of the fact that the fireman, from looking at the fire in the firebox of the engine, could not see clearly for a moment—to wait that moment might have been too late.

Finally, it may be noted that the statute provides that the carrier shall be liable if the injury is caused "in whole or in part" by the negligence of its employe. Can anyone say that the injury in this case was not caused, at least "in part" by the negligence of the engineer?

I am authorized to say that Chief Justice JOHNSTON joins in this dissent.