No. 25,957.

ETHEL MORLAN, as Administratrix of the Estate of ROY MORLAN, Deceased, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Liability for Injury to Servant—Negligence—Federal Employers' Liability Act*. Under the federal employers' liability act, the widow of a fireman on a railroad locomotive engine cannot recover for his death caused by his head coming in contact with a girder of a bridge through which the train was passing, where a number of acts of negligence were alleged, and the jury, in answer to special questions, found but one act of negligence and it had no causal connection with the death of the fireman.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed June 6, 1925. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott*, and *Alfred G. Armstrong*, all of Topeka, for the appellant.

*J. M. Humphrey*, of Erie, *C. S. Denison*, and *E. V. Bruce*, both of Pittsburg, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued to recover under the federal employers' liability act for the wrongful death of Roy Morlan, the husband of Ethel Morlan. Judgment was rendered in favor of the plaintiff, and the defendant appeals.

The petition alleged that Roy Morlan was a fireman on one of the defendant's freight trains; that the defendant was negligent in leaving new rock ballast piled on the railroad track to such a height as caused the ballast to come in contact with the engine, thereby rendering the track dangerous and unsafe; that the defendant had failed to build a bridge, through which the train passed, wide enough to provide a reasonably safe clearance between the engine on which Morlan was riding and the structure of the bridge, thereby causing the head of Morlan to come in contact with the girder of the bridge; that the defendant was negligent in not placing warnings or signals to indicate the presence of the ballast; and that when the engine struck the ballast Morlan became frightened, and to ascertain what was happening and whether or not there was danger to himself, leaned out of the gangway on the engine striking his head against the bridge and was killed. The answer contained a general denial

and pleaded contributory negligence and assumption of risk on the part of the plaintiff.

There was evidence to show that Roy Morlan was a fireman on one of the defendant's freight trains running from Winfield to Independence and carrying interstate freight; that he was killed by his head striking against a girder on a bridge while the train was running through the bridge; that on the track approaching the bridge, crushed rock ballast had been recently placed so as to make the ballast a couple of inches higher in the center of the track than the top of the rail; that there was no signal to indicate the presence of the ballast, any danger connected with it, or any necessary caution; that the train ran into the ballast, which caused the engine to rock and jump, but it did not leave the track; that when the engine struck the ballast Morlan was putting coal in the fire box; that the head brakeman was riding in the engine; that he saw the ballast; that he went into the gangway between the engine and tender to get a drink of water; that while he was drinking the engineer holloed and closed the throttle of the engine; that the train stopped; that when the throttle was closed, smoke and dust entered the cab; that the brakeman applied the blower to expel the smoke and dust; that when the cab cleared, Morlan was missing; that after the train stopped the brakeman went back and found Morlan dead under the bridge; that on a girder of the bridge blood and hair were found, and that a hole had been knocked in the skull of Morlan. Other than as above outlined, no one testified as to how Morlan met his death.

Questions were answered by the jury as follows:

"1. How often had the deceased, Roy Morlan, crossed bridge in question of the defendant company after he entered its employ? A. Every day for five months and every day for several weeks later.

"2. Was not the bridge in question of standard construction; that is, of the same construction as bridges of a similar type on the Southern Kansas division? A. Don't know.

"4. Is it not a fact that passenger train No. 221 of the defendant company passed over the same ballast, track and bridge in the same condition in safety just preceding the train on which Roy Morlan was riding? A. No.

"5. If you answer the last preceding question in the negative, then state in what particulars the ballast, track and bridge differed at the time that the passenger train passed over it and the time the train Roy Morlan was riding passed over it. A. In more packed condition of ballast.

"6. Was not the condition of the track and ballast at the place of the accident caused entirely by the necessary work of ballasting the track of the defendant company? A. Yes.

"7. Was not the work of ballasting the track at the place of the accident done in the usual and customary manner by the defendant in the ballasting its track on the Southern Kansas division of its railroad. A. Don't know.

"9. Where was Roy Morlan last seen before he was found under the bridge? A. Shoveling coal in fire box of engine.

"10. If you find for the plaintiff in this action, in what respect do you find that the defendant, its officers, agents and employees were negligent? A. By not putting out danger signals."

1. The plaintiff seeks to recover under·the principle that where a railroad trainman is instantly confronted with serious danger, he is not to be held responsible under the principle of contributory negligence if, to escape the danger, he selects the wrong method. The defendant responds by arguing that it was not guilty of any negligence; that there was no accident to the engine; that the death of Morlan was not caused by the ballast on the track nor by the failure of the defendant to put out signals; that his death was caused by some act of his not disclosed by the evidence; and that he assumed the risk of the dangers incident to his employment.

So far as negligence as to either the bridge or the ballast was concerned, it was eliminated by the answer of the jury to the tenth question, which found that the defendant was negligent in not putting out danger signals. In *Roberts v. Railway Co.,* 98 Kan. 705, 161 Pac. 590, this court said:

"Where a recovery is sought by reason of several negligent acts of the defendant, and the jury in answer to a special question finds that the negligence upon which they base their verdict is a certain single act of the defendant, the finding in effect acquits the defendant of every charge of negligence alleged in the petition or mentioned in the evidence except the one specifically designated in the finding." (See, also, *Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 140 Pac. 105; *Adams v. Railway Co.,* 93 Kan. 475, 144 Pac. 999; *Williams v. Railway Co.,* 100 Kan. 336, 339, 164 Pac. 260; *Wall v. Traction Co.,* 108 Kan. 531, 533, 196 Pac. 434; *Rathbone v. Railway Co.,* 113 Kan. 257, 259, 214 Pac. 109; *Cooper v. Railway · Co.,* 117 Kan. 703, 705, 232 Pac. 1024.)

In order to establish her cause it was incumbent on the plaintiff to prove that the negligence of the defendant in not placing signals to indicate the presence of the ballast caused the death of her husband. Was there a causal connection between the failure to place signals and the death of Morlan? He was a fireman, and his duties commanded that he devote his principal attention to matters inside the cab of the engine. He could not constantly keep his eye on the track to ascertain whether there was danger ahead or not. The

engineer could have seen the ballast, and he may have seen it. If there had been signals Morlan might have seen them and he might not. If he had been watching for signals he could have seen the ballast. He might not have been able to see the condition of the ballast, but there was no evidence to show that it was in any other than the usual condition of that newly laid.

What caused Morlan to come in contact with the girder on the bridge is not disclosed by the evidence. The brakeman did not see what happened, although he was in the cab of the engine. The engineer did not testify. The plaintiff did not use him as a witness, and the defendant did not introduce any evidence. The burden was on the plaintiff to show what caused Morlan to come in contact with the girder. She argues that he became frightened and attempted to escape impending danger. There was no evidence of that fact except the circumstances surrounding his death. It was the ballast that caused the engine to rock and jump, not the absence of a signal. The ballast did not cause any accident to the engine nor to the fireman. If Morlan became frightened at a supposed danger that did not exist and attempted to get out of the engine to avoid that supposed danger (*Gentry v. Davis,* 114 Kan. 327, 222 Pac. 769; 115 Kan. 335, 222 Pac. 769.), or if he needlessly put his head outside the cab in which he was riding, the plaintiff cannot recover. (*McDougal v. Railway Co.,* 106 Kan. 135, 186 Pac. 1028.)

In *Gila Valley Ry. Co. v. Hall,* 232 U. S. 94, 101, the court said:

"An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence."

Under the findings of the jury, the defendant was not guilty of negligence so far as the ballast was concerned. Morlan knew that railroad tracks are often ballasted with rock and that trains must run over ballast just placed on the track. Morlan, under the rule declared by the United States supreme court, assumed the risk of riding his engine over newly spread ballast where that ballast had not been left in an improper condition.

The judgment is reversed and judgment is entered for the defendant.

JOHNSTON, C. J., HARVEY, and HOPKINS, JJ., dissenting.